137 So.2d 553 (1962)
J.J. MURPHY & SON, INC., (the Printcrafters), Petitioner,
v.
Marguerite GIBBS and the Florida Industrial Commission, Respondents.
No. 31284.
Supreme Court of Florida.
February 7, 1962.
*554 Berson, Barnes & Inman and Jack C. Inman, Orlando, for petitioner.
Welsh, Cornell, Pyszka & Carlton, Charles T. Kessler, Miami, Paul E. Speh and Burnis T. Coleman, Tallahassee, for respondents.
O'CONNELL, Judge.
The respondent-claimant, Marguerite Gibbs, was an employee of the petitioner, J.J. Murphy, Inc. (The Printcrafters). She received a compensable injury while so employed and the petitioner provided suitable medical care and for a period of eight weeks paid her compensation for temporary total disability. Thereafter she filed claim for additional or increased benefits. The deputy commissioner entered an award in her favor and the Full Commission, upon review, affirmed such award, although it reduced the attorney's fees. The petitioner-employer seeks review of this order of the Full Commission.
Claimant had worked for the petitioner some ten years. During the school year she worked for petitioner in the afternoons and early evenings and in the mornings and early afternoons she was employed by the Dade County School Board. During the summer months when school was not in session she worked full time for the petitioner.
In her employment with the school board she worked in the school cafeteria, preparing salads and operating a cash register, an electric meat slicer, and a food chopping machine. For this work she received an average weekly wage of $50.00.
In her employment with the petitioner, for which she received an average weekly wage of $20.00, claimant operated a machine which bound together invoice forms with carbons inserted.
On November 11, 1959 while operating the machine for the petitioner, respondent was injured when the head of the machine came down on her right arm and hand.
Petitioner provided the necessary medical care. It compensated her for temporary total disability for the eight week period running from the date of the accident until January 4, 1960, on which date respondent returned to her employment with the school board but not with the petitioner. This compensation, $12.00 per week, was based upon *555 the average weekly wage paid to her by the petitioner in sum of $20.00 per week.
Thereafter on March 21, 1960 respondent made claim for an increase in compensation based upon the contention her average weekly wage was not $20.00 but was $70.00, that is, $20.00 plus $50.00. She also sought compensation for temporary and permanent partial disability.
At the hearing held on these claims there was presented to the deputy only the testimony of the claimant and a report of an examining physician, Dr. Van M. Browne.
The doctor's report, in the form of a letter, was dated May 21, 1960. In it he said he had examined the claimant on May 20, 1960 and found that because of the injury she had a permanent disability of 45% of the right thumb. He noted therein that "this lady has had no treatment since March 24th," (1960) and he commented that in his opinion she would never be able to return to her former occupation with the petitioner, although she was able to work in the school cafeteria
The deputy questioned claimant as to her disability and had her demonstrate to him the functional limitations such disability imposed upon her.
In his order the deputy stated that claimant was employed by the petitioner and was also employed "in a related employment" at the school cafeteria. He ruled that based upon the commission's decision in Barnes v. White's Superette, Decision No. 2-909 (certiorari denied without opinion, White's Superette v. Barnes, Fla. 1961, 125 So.2d 875) her average weekly wage of $50.00 with the school board should be combined with the $20.00 average weekly wage with petitioner, giving her a total average weekly wage of $70.00. Accordingly, he ordered that for the eight weeks of temporary total disability claimant was entitled to receive compensation based on a $70.00 rather than a $20.00 average weekly wage. He ordered the petitioner to make such adjustment.
Next, after ruling the claimant was liable for the payment of attorney's fees, the deputy stated:
"By the authority of Magic City Bottling [Bottle] & Supply v. Robinson, Fla., 116 So.2d 240, the undersigned Deputy Commissioner, after carefully observing the claimant's use of her hand and arm, and after questioning her at length, is convinced that this compensable injury has affected the use of her entire hand and therefore finds that she has sustained a permanent loss of use of her hand to the extent of onethird."
He ordered payment of compensation for such permanent partial disability on the basis of a $70.00 average weekly wage.
The claimant also sought temporary partial disability benefits from January 4, 1960 (the date she returned to work with the school board) until May 20, 1960. The deputy found that she was temporarily partially disabled from January 4, 1960 "until she reached maximum medical improvement May 20, 1960, in accordance with the opinion of Dr. Van M. Browne." He ordered petitioner to pay claimant compensation for temporary partial disability for 20 weeks in the amount of $20.00 per week.
On review the Full Commission affirmed the deputy's combining the claimant's two average weekly wages so as to reach an average weekly wage of $70.00, approved the award for one-third loss of use of the right hand rather than mere loss of use of the right thumb, and ordered a reduction in amount of attorneys' fees awarded by the deputy. However, the commission made no determination in its order as to the correctness of the award of compensation for temporary partial disability although the order states that such award was one of the four questions raised by petitioner on the review before it
The petition now before us raises three points: (1) whether the wages from claimant's two employments should have been combined; (2) whether the deputy erred in *556 awarding permanent disability benefits for partial loss of use of the hand rather than the thumb; and (3) whether the deputy erred in making the award of temporary partial disability.
We will treat these questions in inverse order.
Awards for temporary partial disability are governed by Sec. 440.15(4) F.S.A. which reads:
"In case of temporary partial disability resulting in decrease of earning capacity the compensation shall be sixty per cent of the difference between the injured employee's average weekly wages before the injury and his wageearning capacity after the injury in the same or other employment, to be paid during the continuance of such disability, but shall not be paid for a period exceeding five years." (Emphasis added)
It is clear that the yardstick by which the amount of compensation for such disability must be measured is the difference between the pre-injury average weekly wages of a claimant and his wage earning capacity after the injury reduced to 60%.
In this case the deputy made no finding as to the claimant's "wage-earning capacity after the injury." The only evidence from which he could have logically inferred such a loss was the fact that prior to the injury claimant earned a total of $70.00 a week and that after she returned to work following the injury she earned only $50.00 a week.
Assuming that this difference in wages earned is sufficient basis for determining loss of wage earning capacity and is proportionate to the loss of such capacity then it would seem that the award should have been 60% of $20.00 or $12.00 per week rather than $20.00 per week as ordered by the deputy. In order to arrive at a figure of $20.00 per week for such award the deputy would have to have found that the loss of wage earning capacity amounted to about $35.00 per week in dollars or roughly a 50% loss of such capacity as measured by her total pre-injury earning of $70.00 per week.
More basic than the above, however, is the fact that there is no evidence whatsoever in the record before us, either in the report of Doctor Browne or in the claimant's testimony, to support a finding that the claimant was temporarily partially disabled from January 4, 1960, the date she returned to work at the school cafeteria, to May 20, 1960, the date Dr. Browne examined her and rated her as having a 45% permanent disability of the thumb. In his report Dr. Browne stated that claimant had received no treatment for her injury since March 24, 1960. There is no evidence as to when the claimant reached maximum medical improvement, or any that indicates she has reached such point.
It is entirely possible that one who is temporarily totally disabled may improve to the point that the total disability becomes only partial and that such partial disability may endure for a period of time before it can be said that there is disability which is permanent. However, in this case the record simply does not show the facts upon which it can be said whether temporary partial disability followed temporary total disability or whether such total disability was followed immediately by permanent partial disability.
The record clearly reflects that temporary total disability ceased on January 4, 1960 when claimant returned to work at the school. It does not reflect that she suffered temporary partial disability following that date.
This cause will have to be remanded to the deputy for the taking of evidence which will show whether the claimant suffered any temporary partial disability following January 4, 1960 and if so, when it terminated, i.e. when claimant reached maximum medical improvement. He will *557 also have to make findings as to the extent of the loss of wage earning capacity occasioned by any such temporary partial disability.
The next question is whether the deputy erred in finding that claimant suffered a permanent disability amounting to a one-third loss of use of the hand rather than a loss of use of the thumb only.
Dr. Browne's letter report reflected that he felt the claimant's permanent disability was confined to the thumb. While the petitioner stated during the hearing before the deputy that it desired to have claimant examined and rated by another physician, this apparently was not done since the petitioner offered no evidence whatsoever in this cause.
The record reflects that the deputy gave very close attention to claimant's disability. He had her demonstrate the functional limitations of her fingers and hand, she described the sensations of pain and numbness in her thumb, hand, wrist and arm and she explained what she could and could not do with her fingers, thumb and hand.
The deputy did not state that he rejected the opinion of Dr. Browne as to the disability of the thumb only. However, in his order he referred to the doctor's opinion, stated that he had carefully observed claimant's use of her hand and arm and that after questioning her at length he had concluded that the disability was to the hand.
Insofar as this question is concerned we think the order is sufficient and that there was competent substantial evidence upon which the deputy could reject the medical testimony and rely on the lay testimony presented to him. Magic City Bottle & Supply Co. v. Robinson, Fla. 1959, 116 So.2d 240.
The remaining question involves the propriety of combining of the wages in claimant's two employments in determining her average weekly wage.
The provisions of Sec. 440.14 F.S.A., entitled "Determination of Pay", must be looked to for the answer to this question. For convenience this section is set out in full:
"Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined subject to limitations of subsection (2) of § 440.12 as follows:
"(1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of thirteen weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the said thirteen weeks.
"(2) If the injured employee shall not have worked in such employment during substantially the whole of thirteen weeks immediately preceding the injury, the wages of a similar employee in the same employment who has worked substantially the whole of such thirteen weeks shall be used in making the determination under the preceding paragraph.
"(3) If either of the foregoing methods cannot reasonably and fairly be applied the full time weekly wages of the injured employee shall be used, except as otherwise provided in subsections (4) or (5) of this section.
"(4) If it be established that the injured employee was a minor when injured, and that under normal conditions his wages should be expected to increase during the period of disability the fact may be considered in arriving at his average weekly wages.

*558 "(5) If it be established that the injured employee was a part-time worker at the time of the injury, that he had adopted part-time employment as his customary practice, and that under normal conditions he probably would have remained a part-time worker during the period of disability, these factors may be considered in arriving at his average weekly wages. For the purpose of this subsection the term `part-time worker' means an individual who customarily works less than the full-time hours or full-time work week of a similar employee in the same employment because unable or unwilling to accept full-time work, and does not include any employee who was working on a part-time basis because (a) his employer failed to provide full-time work for him, (b) he was unable to obtain full-time work, or (c) his attendance at school or college did not permit full-time employment.
"(6) If compensation is due for a fractional part of the week, the compensation for such fractional part shall be determined by dividing the weekly compensation rate by the number of days employed per week to compute the amount due for each day."
At the outset subsection (2) of the abovequoted statute may be eliminated from consideration because the claimant had worked for the petitioner for more than 13 weeks. It is equally obvious that subsection (4) is not applicable because claimant was not a minor when injured, and subsection (6) is not applicable because no fractional part of a week is involved here.
This leaves for consideration subsections (1), (3) and (5). Keeping in mind that the key issue is whether the legislature intended "employment", as the term is used in ascertaining average weekly wages to be used in computing the benefits provided by the Act, to mean only the wages received from the employment of claimant by the petitioner or the wages received from both the concurrent employment by petitioner and the school, we will proceed to analyse these three sections.
Subsection (1) in our opinion contains key words which limit and/or define the meaning of employment as used in the whole section. This statement reads:
"If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer * * * his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the said thirteen weeks." (Emphasis added.)
The underscored words in that portion of subsection (1), copied above, clearly indicate that only the wages received by the claimant for performance of the same type or kind of work as that in which she was engaged at the time of the injury, whether performed for one or more employers, should be used in arriving at her "average weekly wages" for use in determining the amount of compensation to be paid under the Act.
If this were not the intention of the legislature it would have been a simple matter for that body to have either stated that the average weekly wage would be the average of the total wages earned by the claimant from all employment during the specified period rather than on the average of the wages earned in "such employment", or to have simply omitted the restrictive words "in the employment in which he was working at the time of the injury" and "in such employment."
The legislature, however, did use the restrictive words. It must be held that it intended to do so. These words must be given their clear meaning.
As has been pointed out many times workmen's compensation legislation is designed to relieve society generally, and injured employees specifically, of the economic *559 burden resulting from work connected injuries and place the burden on industry. The Florida Act places this responsibility on the employer for whom the injured employee was working at the time of the injury. Thus, the burden is not shifted to industry generally but rather to the specific segment of industry which caused the injury.
Therefore it seems reasonable that the legislature, having placed the burden of meeting the economic loss caused by the injury on a specific segment of industry, would logically have restricted the determination of the amount of the loss to the wages earned by an injured employee in that segment of industry in which the employee was working at the time of the injury. However, since industry for the purposes of this discussion may be classified either according to what it produces or according to the services rendered by the injured employee, we think it necessary to point out that unless it be classified according to the type or nature of the services rendered by the injured employee the interpretation given the statute here would be unfavorable to the employee and would not fully accomplish the obvious purpose of the Act, which is to compensate the injured worker, in part, for loss of future earnings.
Therefore it seems to us that in determining whether wages from several employments may be combined in arriving at an average weekly wage the prime factor is the sameness or similarity of the work performed by the employee rather than the thing done or produced by the employer, although the latter factor may also be considered.
Thus we conclude that in determining "average weekly wages" under Sec. 440.14(1) F.S.A. only wages received by an employee for performance of the same or similar services during the prescribed period may be combined in such computation.
We go next then to a determination of whether the services performed by the claimant in the two concurrent employments involved here were sufficiently similar to justify the wages from both to be combined in determining claimant's average weekly wage.
If the concurrent employments are found to be sufficiently similar such a finding will end this discussion. If the finding is contra then we will have to look to subsections (3) and (5) to determine if either of them control this matter rather than subsection (1).
While as pointed out above such is not the prime factor, it is noted that one of petitioner's concurrent employers was engaged in the printing business while the other was a governmental agency which as a subsidiary function operated a cafeteria in which claimant was employed. There is absolutely no similarity in these facts which can assist claimant.
As to the similarity of the services performed by claimant for the two concurrent employers the facts are simple.
For the Dade County School Board claimant prepared salads, operated an electric cash register, electric slicer and an electric food chopper. In this employment she bore the title of assistant manager of the school cafeteria.
In her employment with the petitioner the claimant operated a "typing machine" which machine apparently took sheets of paper, inserted carbon paper between the sheets and glued all together so as to produce invoices, each having several copies with carbon paper between the copies. In the words of claimant the machine was "run by electricity and propelled by my feet and the work is done collating with each hand."
While the deputy commissioner found that the two employments were "related", a finding not explained in his order, we cannot agree.
The only similarity in services was that in both employments she operated electrically powered machines but there is no similarity *560 whatsoever in the nature of the machines or their operation by claimant.
We therefore must conclude that the two employments were not sufficiently similar to come within the concurrent similar employment doctrine which allows the combining of wages from similar concurrent employment in arriving at the average weekly wage of an injured employee.
We must then examine subsections (3) and (5) to determine if they will assist claimant. We think that they do not offer any aid to her.
Insofar as her work with petitioner is concerned, claimant was undoubtedly a part time worker for she meets the definition of a part time worker as such a worker is defined in subsection (5) of Sec. 440.14 F.S.A. However, on the other hand claimant was a full time employee of the School Board.
We think that subsection (5) was placed in the statute as a limitation to prevent an employee who had voluntarily determined to limit his earnings from being paid compensation on the basis of a full time employee in the same employment. While the words of the subsection are permissive only, i.e. it provides that the fact that a worker is by choice only a part time worker "may be considered" in arriving at the "average weekly wage", it seems clear that the intent was to provide that one who is a part time worker by his own choice will be compensated only on a basis of what he chose to earn as a part time worker, and not on the basis of what he could have earned on a full time basis.
Subsection (5) was added to the Act through ch. 28241, Laws of Florida, 1953. Prior to its addition this court decided two cases involving compensation to a part time worker which might well have been the cause of its adoption.
In Perrin v. Tanner Grocery Co., Fla. 1950, 46 So.2d 886 this court held that a part time employee working two days a week at $6.00 per day should, under Sec. 440.14(3) F.S.A. which read then as now, be compensated on a basis of a full time weekly wage of $36.00 (6 days at $6.00) even though similar employees who worked full time received only $22.50 per week.
Then in Jackson v. Charles F. Connor & Sons, Fla. 1952, 62 So.2d 26, this court held that a part time employee who had been hired for three or four days work at $8.00 per day, but worked only one day, should be compensated on the basis of a full time weekly wage of $8.00. This court, in affirming the circuit court, cited the Perrin case, supra, which is difficult to understand.
Although we cannot say that the decision in the Perrin case led to the adoption of subsection (5), the subsection is obviously designed to permit the result of that case to be avoided.
It seems clear to us that subsection (5) was never intended to apply to a situation where a claimant is a full time employee of one employer and a part time employee of another employer, but rather may in the discretion of the deputy be applied only to an employee who, in the sum total of his work effort, adopts "part-time employment as his customary practice."
Compensation under the Act is designed to compensate a worker for loss of wage earning capacity. Where a worker voluntarily elects to customarily limit such capacity and is injured it seems equitable that the compensation paid under the Act should be based on the earnings he elected to receive rather than on what he might have received had he exercised his full earning capacity.
Where a worker is both a full time employee and a part time employee, as in this case, he quite obviously is not electing to customarily limit his wage earning capacity. The statute recognizes that it would be inequitable to compensate a worker only on the basis of his part time earnings or capacity if such status was not voluntarily assumed.
In the instant case, it would be incorrect to say that the claimant had an earning *561 capacity of only $20.00 per week, the wages received in the part time employment, when the record reveals that she had a proven capacity to earn $70.00 per week.
Thus we conclude that subsection (5) may not be applied to the case before us.
The remaining question is whether subsection (3) applies in a case such as this.
Subsection (3) provides that if either of the methods set forth in subsections (1) and (2) cannot be reasonably and fairly applied then the full time weekly wages of the injured employee shall be used except as provided in subsections (4) and (5).
We think that the term "full time weekly wages" of the employee must be held to mean the wages earned in "the employment in which he was working at the time of the injury." This subsection must be read in conjunction with all other subsections in the section and when this is done the inescapable conclusion is that the legislature intended merely to provide that if the claimant had not worked a full thirteen weeks in "such employment", or if he had not and there was not a similar employee who had worked thirteen weeks in the same employment, then there would be no averaging of earnings but rather the full time weekly wages earned by the claimant would be used as the basis for determining compensation.
It would be illogical to give a construction to the statute which would restrict a claimant who had worked a full thirteen weeks, or had a similar fellow employee who had worked such period, to compensation based on his earnings only in "such employment", yet allow a claimant who had worked less than that period, and had no similar fellow employee who had done so, to combine his weekly wages in "such employment" with wages received from other dissimilar employment covered by the Act.
This it seems to us would be the result if we were to hold that subsection (3) applied in this case and that under it the claimant's compensation should be determined on the basis of the combined wages received from her two dissimilar employments.
We therefore conclude that subsection (3) does not apply to this case.
The question of whether wages in concurrent employments may be combined in determining the average weekly wage of a claimant, whether the employments be similar or dissimilar, has never been decided by this Court. In the final analysis this is the basic issue involved in the point now under discussion.
The question was raised in one case on petition for writ of certiorari but the petition was denied without opinion. White's Superette v. Barnes, Fla. 1960, 125 So.2d 875.
The question has not been squarely presented to either of our District Courts of Appeal. However, in Hooker v. Howell Brown Farms, Fla.App. 1959, 108 So. 297, and in Wilson v. City of Haines City, Fla. 1957, 97 So.2d 208 the Court indicated that wages from dissimilar concurrent employments should not be combined for purposes of determining the average weekly wage.
We have been referred to the history of such type cases before the full industrial commission and have read and considered each of them.
In Watson v. Merrill-Stevens Dry Dock & Repair Co., 1 FCR 355, the commission allowed the combination of wages earned by the claimant in two concurrent employments. However, in both employments claimant performed work as a sheet metal worker. The ruling in that case, under the facts therein, is consistent with our decision in this case.
Next in Wilson v. City of Haines City, 2 FCR 361, certiorari denied with opinion in Wilson v. City of Haines City, Fla. 1957, 97 So.2d 208, supra, the commission, specifying that its order applied "solely to the facts of the particular case" and placing emphasis on the fact that claimant was performing *562 a civic endeavor in acting as a volunteer fireman, stated that his small wages as a fireman could be combined with his wages in other dissimilar employment. As noted in the district court's opinion no combination of wages resulted because the claimant's other employment was that of an independant contractor and businessman and not as an employee. Thus, the question of combining wages in dissimilar employment was not specifically involved.
In Alexander v. Rolfe Armored Truck Service, Inc., Decision No. 2-718, certiorari denied without opinion in Rolfe Armored Truck Service, Inc. v. Alexander, Fla.App. 1958, 105 So.2d 927, the commission ruled that two dissimilar employments (armored car guard and automobile salesman) should be combined, citing as authority its decisions in Watson v. Merrill-Stevens Dry Dock & Repair Co., supra, and Wilson v. City of Haines City, supra. One member dissented, saying that the result was to place on one industry the burden of compensating workers employed in another industry.
The commission next had the case of Barnes v. White's Superette, Decision No. 2-909, certiorari denied without opinion in White's Superette v. Barnes, Fla. 1960, 125 So.2d 875, supra. In that case the claimant was employed as a butcher one day a week and as a life insurance salesman the remainder of the week. He was injured while working as a butcher. The commission, one member dissenting, ruled that the wages should be combined. It recognized that it could be argued that the combination was unfair to the insurance carrier because it received premiums based only on the wages paid as butcher, but said since the carrier was on the risk only one day a week the premium was commensurate with the risk. The dissenting member stated the risk of employment as a butcher was much greater than that as an insurance salesman, but the premium did not reflect such greater risk.
These cases reveal that the commission first combined the wages where the two concurrent employments were indisputably similar. Then the commission expressed a view, based on a hypothetical case, that wages should be combined where the employments were dissimilar, if the employment in which the injury occurred was that of volunteer fireman, a civic endeavor. Next the commission ruled point blank that wages from dissimilar employments could be combined, citing as authority the first two cases above mentioned. In this last cited case, Barnes, supra, the commission met the question head on.
Nowhere in the commission's decisions do we find any reference to statutory provisions which provide or allow the combining of wages from dissimilar employments. Workmen's compensation is entirely a creature of statute and must be governed by what the statutes provide, not by what deciding authorities feel the law should be.
As we have noted above we think that, given a fair construction, our statute intends, at best, that only wages in concurrent similar employments may be combined for the purposes of arriving at the average weekly wage.
Reference to other jurisdictions on this question reveals no consistent result, due no doubt to variance in statutes. See 2 Larson's Workmen's Compensation Law, Sec. 60.31; 11 Schneider, Workmen's Compensation Law, Sec 2190; and 99 C.J.S. Workmen's Compensation § 294(d).
Georgia has a statute identical to the provisions of Sec. 440.14(1), (2) and (3), F.S.A. In St. Paul-Mercury Indemnity Co. v. Idov, 1953, 88 Ga. App. 697, 77 S.E.2d 327, cert. dismissed 210 Ga. 256, 78 S.E.2d 799, the Georgia court ruled that for wages to be combined the concurrent employment must be similar in character.
Larson, in his work above cited, comments that in the great majority of the states the courts have ruled as we do and as did the Georgia court.
Respondent in this case urges that we in this state are free to adopt a rule contrary *563 to the majority rule. In the sense that there is no prior decision of this court, or the district courts of appeal, on this question, it is true that we are free to rule contrary to the majority view. Yet this does not allow us to ignore the provisions of the statute and we feel they require that we align ourselves with the majority.
In view of the fact that the benefits of the Act are designed to compensate workers for loss of earning capacity it may well be that to refuse to allow combination of wages in dissimilar employment will in some instances result in an inequity to a worker since his compensation may be based on wages which do not accurately reflect his actual earning capacity.
While the Act is intended to be and is liberally construed in favor of the worker, nevertheless the drafters also, no doubt, considered the position of the employer and intended to be fair to him and his carrier. This no doubt accounts for the use by the legislature of words which we have held require that compensation be based on the wages earned by a claimant in the same type or kind of employment as that in which he was working at the time of his injury.
If this was not the intention of the legislature it can readily correct our misinterpretation of the statute. It would be easy to change the statute to allow for combination of wages in dissimilar employment.
In this opinion we have decided that:
(1) in determining the average weekly wage of a claimant, wages received from two concurrent dissimilar employments may not be combined, therefore, in this case compensation to claimant must be based on her wages received from the petitioner herein;
(2) there was competent substantial evidence to support the deputy's ruling awarding benefits for partial loss of use of the hand rather than of the thumb; and
(3) the deputy did not make adequate findings of fact to support the award of temporary partial disability, and his finding that such disability existed from January 4, 1960 to May 20, 1960 is not supported by the evidence.
Accordingly, the petition for writ of certiorari is granted in part and the order of the industrial commission is quashed in part with directions to remand the cause to the deputy commissioner for such further proceedings as are necessary to comply with this opinion.
ROBERTS, C.J., and TERRELL, THOMAS and THORNAL, JJ., concur.