627 So.2d 76 (1993)
Blanca E. VEGAS, Appellant,
v.
GLOBE Security and Cigna, Appellees.
No. 91-3417.
District Court of Appeal of Florida, First District.
November 22, 1993.
Jerold Feuer, Miami, for appellant.
Edward W. Levine, of Marlow, Connell, Valerius, Abrams, Lowe & Adler, Miami, for appellees.
Marguerite H. Davis of Katz, Kutter, Haigler, Alderman, Davis, Marks & Rutledge, Tallahassee, for amicus curiae National Council on Compensation Ins.
*77 EN BANC
KAHN, Judge.
Blanca E. Vegas, formerly employed as a security guard at Miami International Airport, has challenged one aspect of the 1990 amendments to chapter 440, Florida Statutes. Ch. 90-201, Laws of Fla. See also, Ch. 91-1, Laws of Fla.[1] Specifically, Ms. Vegas takes issue with that portion of the act which amended section 440.02(24), Florida Statutes, the definition of "wages." Ch. 90-201, § 9, Laws of Fla.; Ch. 91-1, § 7, Laws of Fla. She argues that in calculating her average weekly wages (AWW), the judge of compensation claims (JCC) erroneously utilized the restrictive 1990 definition of wages, rather than adhering to the language of section 440.14(1), Florida Statutes (1989), a section overlooked by the Legislature during the comprehensive facelift given chapter 440 in 1990. She further argues that if the new definition of wages is construed to apply to the calculation of her AWW, then the new statute is unconstitutional as a denial of due process, access to courts, and equal protection.[2] Today we hold that on the facts presented in this case, the calculation of Vegas' AWW under section 440.14(1) has not been altered by the new wording of 440.02(24), and accordingly we reverse and remand. Since the concurrent earning provisions of section 440.02(24) will not apply to the calculation of AWW in this case, we do not reach the constitutional issues raised.
The operative facts are without dispute. Claimant Vegas was injured on July 2, 1990, when she tripped on a rug in the course of her employment with Globe Security. Globe Security contracts to provide security on Concourse D of the Miami International Airport. Claimant, a uniformed security guard, had responsibility for checking passengers and baggage passing on to the concourse. She also worked for Argenbright & Associates, a company that contracted to provide security on the B and C Concourses at the airport. Both companies supplied her with a uniform, and her job responsibilities for each employer were very similar. Claimant had worked as a security person at least for substantially all of the 13 weeks prior to her accident.
By stipulation, claimant and Globe Security agreed that claimant's AWW with Globe Security is $156.38. They further stipulated that the AWW with Argenbright & Associates is $92.66. In the order now under review, the JCC found that the definition of wages contained in section 440.02(24), Florida Statutes (Supp. 1990), controls the computation of AWW under section 440.14(1)(a), Florida Statutes (1989). He thus entered an order finding that claimant's concurrent employment earnings from Argenbright & Associates could not be included in the calculation of her AWW, under the dictates of section 440.02(24). AWW was therefore established, pursuant to the stipulation, at $156.38.
AWW under chapter 440 is a term of art, and may only be calculated by reference to the formula contained in section 440.14, or some other comparable statutory formula. The portion of section 440.14 that applies to the present case provides as follows:
440.14 Determination of pay. 
(1) Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined, subject to the limitations of s. 440.12(2), as follows:
(a) If the injured employee has worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks. As used in this paragraph, the term "substantially the *78 whole of 13 weeks" shall be deemed to mean and refer to a constructive period of 13 weeks as a whole, which shall be defined as a consecutive period of 91 days, and the term "during substantially the whole of 13 weeks" shall be deemed to mean during not less than 90 percent of the total customary full-time hours of employment within such period considered as a whole.
§ 440.14(1)(a), Fla. Stat. (1989).
During the 1990 revisions to chapter 440, the Legislature neither added nor took away any of the operative language of section 440.14(1)(a). Similarly, neither in 1990, nor at any time before or since, has the Legislature provided in the definitional section of chapter 440 a definition of AWW. It is clear from a review of the language of section 440.14(1)(a) that the term "average weekly wages" is not synonymous with the term "wages." Section 9 of chapter 90-201, as codified at section 440.02(24), Florida Statutes (Supp. 1990), provides the following definition of wages:
(24) "Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury and includes only the wages earned on the job where the employee is injured and does not include wages from outside or concurrent employment except in the case of a volunteer firefighter. ...
(emphasis added).
The employer/carrier urges that the Legislature's use of the phrase "includes only the wages earned on the job where the employee is injured and does not include wages from outside or concurrent employment" significantly alters the practical application of section 440.14(1). In support of their contention, the employer/carrier point to the legislative intent set out in chapter 90-201[3] and *79 also to the prefatory language of section 440.14(1): "Except as otherwise provided in this Chapter... ." Neither argument, however, provides us with sufficient rationale to ignore the plain language of section 440.14(1)(a).
At the outset of our analysis, we note that the term "wages," defined in the 1990 amendments, does not, within the literal language of section 440.14(1)(a), stand alone so that its definition may be derived simply by resort to section 440.02(24). The word "wages" first appears as part of the phrase "average weekly wages," which is obviously the subject of section 440.14. In subsection (1)(a) the term "wage" appears once more as part of the phrase "average weekly wage." The word "wages" appears but one other time in the statute, namely at the end of the first sentence of subsection (1)(a). The reference at this point, however, is not simply to wages. It is specifically and exclusively to "wages earned in such employment." To look only to section 440.02(24) for enlightenment as to the meaning of wages would require us to ignore the phrase "earned in such employment." This phrase, however, refers back to the most significant part of the sentence which provides: "If the injured employee has worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury. ..." The phrase "such employment" can only relate back to the employment previously referred to in section 440.14(1)(a), which expressly includes "the same or another employer." We must thus determine the meaning of this language, and such a task may only be accomplished by resort to the case law of three decades focusing upon this very statute.
In Jaquette Motor Co. v. Talley, 134 So.2d 238 (Fla. 1961), the supreme court looked at the 1957 version of section 440.14, which was identical to the portion of section 440.14(1)(a), Florida Statutes (1989), that we construe today. In Jaquette, the deceased employee had earnings from both Jaquette Motor Company and the Florida East Coast Railway. The deputy commissioner in that case based the award of compensation on a combination of earnings from both employments. The supreme court concluded that error occurred by inclusion of the earnings from Florida East Coast Railway, but based such conclusions solely upon the fact that employment by the railroad is "specifically exempted from the operation of the Workmen's Compensation Act." 134 So.2d at 240. The court observed, without passing judgment, that section 440.14 had historically been construed by the Florida Industrial Commission as authority for using concurrent earnings in the calculation of AWW:
Sub-section (3) of the same section provides "if either of the foregoing methods cannot reasonably and fairly be applied the full time weekly wages of the injured employee shall be used, except as otherwise provided in subsection (4) or (5) of this section."
... The latter section has been cited by the Industrial Commission as authority for combining for the purposes of computing the average weekly wage the earnings of a claimant from two concurrent though dissimilar employments where the employments were both covered by the Workmen's Compensation Act. White's Superette v. Barnes, Claim No. 2-90874; cert. den. 125 So.2d 875. The basis of the White's Superette decision was that it was neither reasonable nor fair to compute the wage base of the employee solely upon his earnings from the employment out of which his injury transpired.
134 So.2d at 240 (emphasis in original).
The statutory language identified in Jaquette as deriving from subsection (3) is the same language that still survives as section 440.14(1)(d), Florida Statutes (1991).
One year later the court again looked at section 440.14 in J.J. Murphy & Son, Inc. v. Gibbs, 137 So.2d 553 (Fla. 1962), a case involving a 1959 industrial injury. Claimant Gibbs worked for J.J. Murphy & Son in the afternoons and early evenings as a bookbinder, *80 and worked in the mornings and early afternoons for the Dade County School Board as a food service worker. The court focused upon the same provisions of section 440.14 that concern us today, namely "employment in which he was working at the time of the injury ..." and "in such employment... ." The court concluded that in determining AWW under section 440.14(1), "only wages received by an employee for performance of the same or similar services during the prescribed period may be combined in such computation." 137 So.2d at 559. Finding the controlling statutory phraseology to be "the employment in which he was working at the time of the injury," the supreme court concluded:
[I]n determining whether wages from several employments may be combined in arriving at an average weekly wage the prime factor is the sameness or similarity of the work performed by the employee....
137 So.2d at 559. Thus, although the J.J. Murphy court required similar jobs in order to qualify the claimant for concurrent wages, the court focused on the statutory use of the term "employment" and paid no mind whatever to the definition of wages contained in section 440.02(12), Florida Statutes (1957). Significantly, in commenting upon the purposes underlying the various subsections of section 440.14, the court observed:
Compensation under the Act is designed to compensate a worker for loss of wage earning capacity. Where a worker voluntarily elects to customarily limit such capacity and is injured it seems equitable that the compensation paid under the Act should be based on the earnings he elected to receive rather than on what he might have received had he exercised his full earning capacity.
Where a worker is both a full time employee and a part time employee, as in this case, he quite obviously is not electing to customarily limit his wage earning capacity. The statute [440.14] recognizes that it would be inequitable to compensate a worker only on the basis of his part time earnings or capacity if such status was not voluntarily assumed.

137 So.2d at 560 (emphasis added).
The J.J. Murphy case as a whole demonstrates quite clearly that the supreme court in no way questioned the proposition that the computation of AWW under section 440.14 could include concurrent employment. Rather, the court, through detailed analysis, concluded that "only wages in concurrent similar employments may be combined for the purposes of arriving at the average weekly wage." 137 So.2d at 562.
Ten years after J.J. Murphy, the supreme court had for consideration American Uniform & Rental Service v. Trainer, 262 So.2d 193 (Fla. 1972). The question put to the court was whether the rule of J.J. Murphy, requiring concurrent similar employment, should give way to a new rule allowing combination of wages from concurrent dissimilar employment. Once again the court confined its analysis to section 440.14, and made no mention whatever of the definition of wages contained in section 440.02. Expressly referring to section 440.14, the court noted:
On re-examination of the J.J. Murphy case, we find that the frequently inequitable results arising from the rule of that case, prohibiting a combination of wages from concurrent dissimilar employment, are not required by Florida Statutes § 440.14, F.S.A., or any other section of the Workmen's Compensation Act.
If the injury occurring on the part-time job has disabled the employee from working at his full-time job, his capacity as a wage earner is impaired beyond the limits of his part-time job and his compensation should be based on the combined wages. The purpose of the Act is to compensate for loss of wage earning capacity due to work-connected injury. It is the capacity of the "whole man" not the capacity of the part-time or full-time worker that is involved.

262 So.2d at 194 (emphasis added).[4]
When the 1990 Legislature substantially rewrote the Act, it created section 440.015, *81 Florida Statutes (Supp. 1990). Ch. 90-201, § 8, Laws of Fla. This new statute, entitled "Legislative intent," provides that the workers' compensation law should be interpreted "so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker at a reasonable cost to the employer" (emphasis added). The extensive legislative preamble to the Act, set out verbatim, supra, n. 3, states, "[T]he reductions in benefits provided in this Act are necessary to ensure rates that will allow employers to continue to comply with the statutory requirement of providing workers' compensation coverage but are nonetheless calculated to provide an adequate level of compensation to injured employees" (emphasis added). Any suggestion that the new definition of wages must control over the statutory and case law concept of AWW not only ignores section 440.015, it also takes no heed of the legislature's decision to maintain an adequate level of compensation. In the case of the worker whose earning capacity is realized through multiple employments, a determination of compensation based entirely upon the happenstance of which job the worker is injured on either overlooks the intent of providing an adequate level of compensation, or renders the term "adequate" meaningless.
Having included among its goals the delivery of disability benefits and the preservation of adequate compensation for injured workers, the Legislature did not amend the longstanding definition of disability. Disability, under the Workers' Compensation Act, continues to mean a reduction of the injured worker's ability to earn wages in the same or any other employment. § 440.02(11), Fla. Stat. (Supp. 1990). Thus, as observed by the court in American Uniform, 262 So.2d at 196, it is appropriate to look at the post-injury earnings from other employment, or multiple other employments, in order to determine the claimant's earning capacity remaining after the accident. Such remaining earning capacity reduces the claimant's compensation for disability under section 440.15, Florida Statutes. It would be illogical at best, and arbitrary at worst, to apply the statutes to reduce post-injury disability benefits, using the claimant's residual ability to perform multiple occupations, other than the one in which she was injured, yet to still maintain that AWW may not take into account the full pre-accident earning capacity of an injured claimant.
The practical effect of appellee's argument would be to treat Ms. Vegas, a person who worked full time (albeit for two different employers) at the occupation of airport security, as if she were a part-time worker. Section 440.14(1)(f) makes a special provision for true part-time workers:
If it is established that the injured employee was a part-time worker at the time of the injury, that he had adopted part-time employment as his customary practice, and that under normal working conditions he probably would have remained a part-time worker during the period of disability, these factors shall be considered in arriving at his average weekly wages. (emphasis added)
Thus, a true part-time worker is only entitled to have AWW computed on the basis of part-time earnings. Faust v. Southeastern Contracting & Door Service, 468 So.2d 509 (Fla. 1st DCA 1985). Such a limited computation is exactly what would befall Ms. Vegas by virtue of the compensation order below, although no one has ever contended that she adopted part-time employment as her customary practice. Since section 440.14(1)(f) *82 already makes provision for a true part-time worker, it would be contrary to reason to treat a worker who must serve multiple employers in order to receive a full-time pay-check as if she were a part-time worker. Indeed, our cases provided that even in those pre-1990 scenarios in which concurrent earnings were excluded from the AWW computation (such as in an independent contractor situation), such did not preclude the JCC from considering the claimant's status as a full-time worker. Edwards v. Caulfield, 560 So.2d 364, 374 n. 6 (Fla. 1st DCA 1990). "To hold otherwise would result in an AWW determination which is not truly representative of claimant's pre-injury earning capacity, and would violate the underlying purpose of the Act." Id. The exclusion of concurrent wages under the pre-1990 law did not prohibit the JCC from making a determination that the injured claimant was in fact a full-time worker and therefore computing AWW under either sections 440.14(1)(b) or 440.14(1)(d).[5] The result we reach today is consistent with this practice.
On many other occasions the supreme court has commented authoritatively on the purpose of the Florida Workers' Compensation Act. E.g., McCoy v. Florida Power & Light Co., 87 So.2d 809, 810 (Fla. 1956) (the law was designed "to prevent those who depend on the workers' wages from becoming charges on the community. The law operates to place the burden for such misfortunes upon industry."); Dennis v. Brown, 93 So.2d 584, 588 (Fla. 1957) (workmen's compensation acts designed "to remove from the workman himself the burden of his own injury and disability and place it on the industry which he served"); Port Everglades Terminal Co. v. Canty, 120 So.2d 596, 602 (Fla. 1960) (the law was intended "to provide a direct, informal and inexpensive method of relieving society of the burden of caring for injured workmen and to place the responsibility on the industry served"); Lee Engineering & Constr. Co. v. Fellows, 209 So.2d 454, 456 (Fla. 1968) (act originally passed so that injured employee, his family, or society generally, would be relieved of the economic stress resulting from work connected injuries, and place the burden on the industry which caused the injury).
In Witzky v. West Coast Duplicating & Claims Center, 503 So.2d 1327, 1329 (Fla. 1st DCA 1987), this court characterized AWW, the calculation of which is controlled by section 440.14(1)(a), as "simply a method of establishing the value of an employee's lost ability to earn future wages during the period of disability attributable to the covered industrial accident." The court quoted from Larson's treatise:
The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.
Id., quoting 2 Larson, The Law of Workmen's Compensation, § 60.11(d), pp. 10-564 (1986).
We now turn to the contention of Globe Security and of amicus that the language "Except as otherwise provided in this chapter," which introduces section 440.14, serves *83 to trigger reliance upon the definition of wages contained in section 440.02(24), and compels the court to ignore the longstanding statutory scheme for computing AWW contained in section 440.14(1). We first observe that neither the employer/carrier nor amicus have provided us with any authority that "otherwise provided in this chapter" has ever been intended to refer to the definition of wages enacted in 1990. Quite to the contrary, the "Except as otherwise provided" provision existed for decades before the Legislature thought to fine tune the statutory definition of wages.
In order to successfully rely upon this proviso, appellees would need to direct us to an alternative statutory definition of AWW. On its face, the proviso does not even suggest a substitute definition of AWW for persons with concurrent employment. Rather, the proviso language literally directs that the AWW of the injured employee shall be taken as the basis upon which to compute compensation, unless otherwise provided in chapter 440. Appellees in this case do not contend that Ms. Vegas' AWW should not be used to compute compensation. Rather, Globe Security asks us to ignore the provisions of section 440.14(1) in computing AWW.[6] As we have previously determined, nothing in the statute indicates that AWW is synonymous with wages.
This is not to say that the statutory definition in section 440.02(24) could never be considered in calculating the AWW under section 440.14(1). For example, the new definition of wages expressly limits the fringe benefits that can be considered.[7] The statutory elimination of most fringe benefits, unlike the attempt to eliminate concurrent employment, fits neatly into the formula provided by section 440.14(1)(a), and merely adjusts the required calculation of "total amount of wages." See Rudd Sod Co. v. Reeves, 595 So.2d 254 (Fla. 1st DCA 1992). What is more, this court has analyzed the inclusion or noninclusion of fringe benefits in AWW with specific reference to the statutory definition of wages. See Pan American World Airways v. Mash, 573 So.2d 383, 385 (Fla. 1st DCA 1991); Bright v. City of Tampa, 546 So.2d 1122, 1124 (Fla. 1st DCA 1989); Layne Atl. Co. v. Scott, 415 So.2d 837, 838-839 (Fla. 1st DCA 1982). Concurrent earnings analyses, on the other hand, have relied upon the legal concept of AWW as embodied in section 440.14, and we will not ignore the plain language of the statute unless another guide to calculation, whether more restrictive or more liberal, is provided at some other place in the act.[8]
Our close attention to the AWW concept contained in section 440.14, and our ultimate conclusion that the new definition of wages in section 440.02(24) does not impact the calculation of AWW in the present case, is made with full appreciation that the concept of AWW means nothing until it is applied to actually determine compensation benefits under section 440.15, Florida Statutes (Supp. 1990). We have particularly noted the statutory sections controlling temporary and permanent wage loss benefits. Section 440.15(4), *84 Florida Statutes (Supp. 1990), entitled "TEMPORARY PARTIAL DISABILITY," provides that in case of temporary partial disability, "benefits shall be based on actual wage loss." Similarly, the permanent wage loss statute, section 440.15(3)(b), Florida Statutes (Supp. 1990), which applies in cases of permanent, but less than total, disability, provides that an injured worker who suffers a permanent impairment "which affects such employee's ability to perform the activities of his usual or other appropriate employment," may be entitled to wage loss benefits which "shall be based on actual wage loss." These provisions of section 440.15, like the AWW calculation provisions of section 440.14, were not changed by virtue of chapter 90-201, Laws of Florida. The Legislature has clearly provided that wage loss benefits, both temporary and permanent, shall be based on actual wage loss. If claimant's AWW must be computed, as appellees urge, by utilizing section 440.02(24), the JCC would be required to ignore the specific dictates of sections 440.15(3)(b) and 440.15(4), which refer not merely to wages or wage loss, but to actual wage loss.
Appellees urge that the statement of legislative intent, supra, n. 3, should persuade us that the Legislature intended to correct "a longstanding judicial misinterpretation of the Act," directly referring to the decision in American Uniform & Rental Service v. Trainer, supra. In Ciancio v. North Dunedin Baptist Church, supra, n. 2, we observed that the 1990 amendment to section 440.02(24) acted "to depart from the existing law regarding concurrent earnings as delineated in cases such as American Uniform and Rental Service v. Trainer, 262 So.2d 193 (Fla. 1972), and K-Mart v. Jones, 502 So.2d 495 (Fla. 1st DCA 1987)." 616 So.2d at 62. Nothing on the face of Ciancio, however, indicates that the court was in that case urged to conclude that section 440.14(1)(a) should control the computation of average weekly wages.[9] Moreover, and in retrospect, we note that nothing in American Uniform & Rental Service v. Trainer or K-Mart v. Jones indicates that either of those decisions was predicated upon the statutory definition of wages. American Uniform's rationale derived from section 440.14, as has been detailed above. Similarly, even a quick review of K-Mart v. Jones establishes that this court was construing only the AWW statute, section 440.14. Accordingly, and without changing the result in Ciancio, we now decline to hold that chapter 90-201, Laws of Florida, overruled case law interpreting section 440.14(1). We reach this conclusion because chapter 90-201, despite its expansive nature, did not in any way address section 440.14(1).
In reaching this result, we do not ignore the contention that we should construe section 440.14(1)(a) with reference to the legislative intent so eloquently set out in the preface of chapter 90-201, Laws of Florida. Globe Security argues that the Legislature clearly intended, by amending section 440.02(24), to eradicate the longstanding requirement that employers must pay disability benefits based on the worker's concurrent earnings. Whether or not this is an accurate observation, the Legislature may not, however, change substantive law by merely expressing its intent. It is also necessary to amend the controlling substantive statute, which in this case is section 440.14. "While legislative intent controls construction of statutes in Florida, Griffis v. State, 356 So.2d 297 (Fla. 1978), that intent is determined primarily from the language of the statute. S.R.G. Corp. v. Department of Revenue, 365 So.2d 687 (Fla. 1978). The plain meaning of the statutory language is the first consideration." St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982). This maxim applies even "where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the act... ." Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918), quoted in St. Petersburg Bank & Trust Co. v. Hamm, supra, at 1073.
The foregoing rules are further buttressed by our supreme court's decision in Shelby Mutual Insurance Co. v. Smith, 556 So.2d 393 *85 (Fla. 1990). Shelby Mutual involved construction of section 627.727(3), Florida Statutes (1985). In 1984, the Legislature amended section 627.727(1) to provide that uninsured motorist (UM) insurance coverage would be available to cover the difference between the total amount of liability insurance benefits available and the total damages sustained by the UM insured, up to the maximum amount of uninsured motorist coverage provided. The legislative staff analysis pertinent to the amendment clearly established that the legislature intended to provide that all uninsured motorist insurance would be excess UM coverage no matter how much liability insurance applied. Shelby Mutual Insurance Co., supra, at 398 (Shaw, J., dissenting). It turned out, however, that the Legislature failed to amend section 627.727(3) which had for many years defined the term "uninsured motor vehicle" as an insured motor vehicle whose liability insurer has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage. Thus, although the 1984 amendment clearly sought to make all uninsured motorist coverage excess coverage, the Legislature left intact the old definition of uninsured motor vehicle, which required a situation in which the tortfeasor's liability insurance was less than the applicable uninsured motorist coverage. The supreme court refused to construe the 1984 amendment to accommodate the result intended by the Legislature:
The district court of appeal supported its conclusion by reference to a legislative staff analysis concerning the enactment of the 1984 amendment. Following the 1982 amendment, insurers were required to provide traditional UM coverage and also excess and underinsured motor vehicle coverage. According to the legislative staff analyses of both the Senate and the House of Representatives, the 1984 amendment was designed to combine these coverages into a single form of UM coverage which would be excess underinsured motorist coverage. From examples given within the text of these analyses, it is clear that the authors intended that the 1984 amendment would create the result urged by Smith in this case.
However, we believe the court below misconstrued the language of the statute itself, thereby rendering superfluous what the legislative staffs may have intended. The plain meaning of statutory language is the first consideration of statutory construction. St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071 (Fla. 1982). Only when a statute is of doubtful meaning should matters extrinsic to the statute be considered in construing the language employed by the legislature. Florida State Racing Comm'n v. McLaughlin, 102 So.2d 574 (Fla. 1958). Courts may look to legislative history only to resolve ambiguity in a statute. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983).
556 So.2d at 395.
Our examination of section 440.14(1)(a) has not convinced us that this particular statute is "of doubtful meaning." We are thus guided by the plain meaning of the statutory language, and are inescapably drawn to the Legislature's retention in section 440.14(1)(a) of the provision requiring consideration of the claimant's earnings "whether for the same or another employer" during the 13 weeks immediately preceding the injury, and also to the statutory requirement establishing AWW at one-thirteenth "of wages earned in such employment." These phrases, completely unaffected by the 1990 amendments, are neither ambiguous nor are they modified by the new definition of wages. The teaching of Shelby Mutual is that where the Legislature attempts to rectify a perceived problem that is directly impacted by multiple statutes, the solution will not lie in merely amending one of the several statutes. In the present case, we find the intact formula for average weekly wages to be controlling.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ERVIN, SMITH, BARFIELD, MINER, WEBSTER, MICKLE and LAWRENCE, JJ., concur.
*86 ZEHMER, C.J., concurs with written opinion.
ALLEN, J., dissents with written opinion in which BOOTH, JOANOS and WOLF, JJ., concur.
WOLF, J., dissents with written opinion in which BOOTH and JOANOS, JJ., concur.
DAVIS, J., recused.
ZEHMER, Chief Judge, concurring.
I fully concur with the excellent analysis in Judge Kahn's majority opinion. I write only to explain my concurrence in that opinion and my concurrence in Ciancio v. North Dunedin Baptist Church, 616 So.2d 61 (Fla. 1st DCA 1993).
In Ciancio the only argument made to us was that discussed in the opinion, i.e., the unconstitutionality of section 440.02(24) on equal protection grounds. The parties' arguments and the opinion in that case assumed without further analysis that the new definition in section 440.02(24) operated to exclude concurrent earnings in determining the claimant Ciancio's wages, and that case was decided without benefit of the argument made in this case upon which Judge Kahn's opinion is based. Appellate judges usually decide cases on the arguments made by the parties in the case under consideration, and for that reason judges at times base their decision on unargued assumptions or premises that, after deeper scrutiny, may be found to be erroneous. That is what happened in Ciancio. Hence, the holding of that case does not reach the issue presented by the arguments in this case because no such argument was made. I continue to agree that, assuming section 440.02(24) was intended to exclude concurrent wages from the determination of all benefits under chapter 440, such a provision would not violate constitutional guarantees to equal protection of the law, as we held in Ciancio. But I now agree that the assumption underlying the opinion in Ciancio, that this was the effect of the 1990 amendment redefining the term wages, is completely erroneous for the reasons discussed in Judge Kahn's opinion.
ALLEN, Judge, dissenting.
Despite the cogent and dexterous reasoning of the majority opinion, I cannot agree to an average weekly wage determination under section 440.14(1)(a), Florida Statutes, without resort to the definition of wages in section 440.02(24), Florida Statutes. The majority's concern as to the practical effect of applying section 440.02(24), in light of the broad philosophical purposes underlying the Workers' Compensation Law, is more properly a matter of legislative policy than judicial imprimatur. In construing section 440.14(1)(a) in isolation, the majority disregard the acknowledged legislative intent reflected in section 440.02(24) to alter the existing law regarding concurrent earnings, as indicated in Ciancio v. North Dunedin Baptist Church, 616 So.2d 61 (Fla. 1st DCA 1993).
As a term of art used in chapter 440, "average weekly wages" under section 440.14 are obviously not synonymous with the definition of "wages" provided in section 440.02(24). However, wages are a component of the average weekly wage computation, and the statutory definition of wages should thus apply in connection therewith. Indeed, the majority recognizes that the section 440.02(24) definition of wages applies to the average weekly wage computation in other contexts (fringe benefits). Characterizing the historical evolution of the concurrent earnings doctrine as a "legal concept" does not justify a different approach as to this aspect of section 440.02(24), as it is clearly within the legislature's power to delineate the wage standard upon which an injured worker may be compensated.
I would thus accord section 440.02(24) its plain meaning and intended effect, so as to limit the concurrent earnings which are includable in a claimant's wages under chapter 440. This does not depend on either the prefatory language in chapter 90-201, Laws of Florida, or any other extrinsic expression of intent. Rather, I would adhere to the primary consideration of statutory construction as expressed in Shelby Mutual Ins. Co. v. Smith, 556 So.2d 393 (Fla. 1990),  the plain meaning of the statutory language. Giving effect to section 440.02(24) does not conflict with the references to actual wage loss in *87 section 440.15, Florida Statutes, as such wage loss is circumscribed by the definition of wages, and even under the prior law not all lost earnings were compensated (e.g., noncovered earnings). Nor does section 440.02(24) present any necessary conflict with the average weekly wage concept under section 440.14(1)(a). While this concept encompasses a claimant's earnings "in the employment in which he was working at the time of the injury, whether for the same or another employer," such language may still be given effect with regard to a claimant who continues to work at one job with a change in the employing entity. This language does not compel the inclusion of earnings from concurrent employment, and inasmuch as section 440.02(24) generally excludes concurrent employment earnings from the definition of wages, these earnings should be excluded from the average weekly wage computation.
WOLF, Judge, dissenting.
While the policy decision of the Legislature to define wages as "only the wages earned on the job where the employee is injured" may lead to distasteful and unsuitable results in some cases, I must agree with the reasoning expressed in Judge Allen's dissent. The Legislature did, in fact, accomplish its purpose by the amendment to section 440.02, which was to base the calculation of compensation benefits only on the wages earned in employment where the worker was injured.
The majority argues that because previous cases, including Jacquette Motor Co. v. Talley, 134 So.2d 238 (Fla. 1961); J.J. Murphy and Sons, Inc. v. Gibbs, 137 So.2d 553 (Fla. 1962); and American Uniform Rental Service v. Trainer, 262 So.2d 193 (Fla. 1972), which construe what wages were to be considered in calculating AWW pursuant to 440.14(1), have not mentioned the definition of wages in section 440.02, then any amendment to the definition of wages contained in section 440.02 would be ineffective in determining how average weekly wage is to be calculated. Silence should not be construed to provide precedent or support for ignoring the clear statutory intent merely because of the court's disagreement with the legislative policy.
NOTES
[1] The supreme court found that chapter 90-201 violated the single subject requirement of article III, section 6 of the Florida Constitution. Martinez v. Scanlan, 582 So.2d 1167 (Fla. 1991). Shortly thereafter, the legislature cured the single subject defect by reenacting the law.
[2] This court has previously rejected a claim based upon equal protection grounds. Ciancio v. North Dunedin Baptist Church, 616 So.2d 61 (Fla. 1st DCA 1993).
[3] In particular, Globe Security directs us to the following legislative statement contained in the session law:

WHEREAS, the Legislature finds that there is a financial crisis in the workers' compensation insurance industry, causing severe economic problems for Florida's business community and adversely impacting Florida's ability to attract new business development to the state, and
WHEREAS, the Legislature finds that businesses are faced with dramatic increases in the cost of workers' compensation insurance coverage, and
WHEREAS, a report to the Joint Select Committee on Workers' Compensation of the Florida Legislature revealed that the rates for workers' compensation insurance are 54 percent higher than the nationwide average, 75 percent higher than the average of all states in the southeastern United States, and 60 percent higher than the average of those states contiguous to Florida, and
WHEREAS, such report also indicated that Florida has experienced one of the highest rates of increase in premiums for workers' compensation insurance anywhere in the United States during the last 5 years, and
WHEREAS, such report also indicated that the present level of medical benefit payments under the Florida Workers' Compensation Law is 42 percent higher than the nationwide average level of such benefit payments, 38 percent higher than the southern United States average level of such benefit payments, and 38 percent higher than the average level of such benefit payments in states contiguous to Florida, and
WHEREAS, such report also indicated that the present level of indemnity benefit payments under the Florida Workers' Compensation law is 31 percent higher than the nationwide average level of such benefit payments, 60 percent higher than the southern United States average level of such benefit payments, and 106 percent higher than the average level of such benefit payments in states contiguous to Florida, and
WHEREAS, the reductions in benefits provided in this act are necessary to ensure rates that allow employers to continue to comply with the statutory requirement of providing workers' compensation coverage but are nonetheless calculated to provide an adequate level of compensation to injured employees, and
WHEREAS, it is the sense of the Legislature that if the present crisis is not abated, many businesses will cease operating and numerous jobs will be lost in the State of Florida, and
WHEREAS, the Legislature believes it is necessary to avoid the workers' compensation crisis, to maintain economic prosperity, and to protect the employee's right to benefits if injured on the job, and
WHEREAS, the Legislature finds that there is an overpowering public necessity for reform of the current workers' compensation system in order to reduce the cost of workers' compensation insurance while protecting the rights of employees to benefits for on-the-job injuries, and
WHEREAS, the Legislature finds that the reforms contained in this act are the only alternative available that will meet the public necessity of maintaining a workers' compensation system which provides adequate coverage to injured employees at a cost that is affordable to employers, and
WHEREAS, the magnitude of these compelling economic problems demands immediate, dramatic and comprehensive legislative action... .
[4] While the supreme court reached the American Uniform holding by construing section 440.14, the court did not specifically state which subsection of the statute applied to calculation of AWW in a case of concurrent earnings. In Jaquette, supra, the court referred to subsection (3) of section 440.14 (440.14(1)(d), Fla. Stat. (Supp. 1990)), as the basis upon which the Florida Industrial Commission had allowed concurrent earnings through dissimilar employment. While it is difficult to be completely sure, it would appear that the court in American Uniform was construing subsection (1) of the statute, which is now section 440.14(1)(a). American Uniform approved the decision of the Industrial Commission in Watson v. Merrill-Stevens Dry Dock & Repair Co., 1 FCR 355 (1956). The Commission in Watson found the combination of concurrent earnings to be "within the contemplation of Section 440.14(1)," 1 FCR at 357. This court has followed Watson and American Uniform in Quality Painting, Inc. v. Harrison, 529 So.2d 1172, 1173 (Fla. 1st DCA 1988), stating "that in cases of dissimilar concurrent employment section 440.14(1)(a) will apply, and the combined wages approach should be utilized, if the claimant has worked for the requisite 13 weeks in one of the employments."
[5] Section 440.14(1)(b), Florida Statutes (1989), provides:

If the injured employee has not worked in such employment during substantially the whole of 13 weeks immediately preceding the injury, the wages of a similar employee in the same employment who has worked substantially the whole of such 13 weeks shall be used in making the determination under the preceding paragraph.
Section 440.14(1)(d), Florida Statutes (1989), provides:
If any of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wages of the injured employee shall be used, except as otherwise provided in paragraph (e) [making provision for an injured employee under 22 years of age] or paragraph (f).
[6] Although not acknowledged by appellees, we note that chapter 440 does contain provisions for compensation which are not based strictly upon AWW as computed under section 440.14(1). See e.g., 440.15(1)(e)1, Fla. Stat. (1991); 440.15(3)(a)1.a. & b., Fla. Stat. (1991); 440.16(1)(a) & (c), Fla. Stat. (1991).
[7] Fringe benefits are now limited to "the reasonable value of housing furnished to the employee by the employer which is the permanent year-round residence of the employee, and gratuities to the extent reported to the employer in writing as taxable income received in the course of employment from others than the employer and employer contributions for health insurance for the employee or the employee's dependents." 440.02(24), Fla. Stat. (1991).
[8] The dissenters urge that the legislative change to section 440.02(24) controls over the unchanged characterization of AWW. At least since 1941, chapter 440 has defined wages as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury... ." See e.g., 440.02(12), Fla. Stat. (1941). The supreme court never construed the language "under the contract of hiring in force at the time of injury" to restrict the calculation of AWW to wages earned on the job at which the employer was injured, although arguably such would have been a logical construction. Rather, for 49 years the courts looked to the concept of AWW. The legislature may, of course, trump these AWW cases. It must do so, however, by playing a card, and not by merely suggesting which card would be played should the occasion arise.
[9] Cf., Waldorf v. Jefferson County School Bd., 622 So.2d 515 (Fla. 1st DCA 1993) (in which claimant's counsel stipulated that section 440.02(24), Florida Statutes (Supp. 1990), rendered concurrent employment irrelevant).