994 So.2d 355 (2008)
FAST TRACT FRAMING, INC., and Traveler's Indemnity Company/Saint Paul Travelers, Appellants,
v.
Jose CARABALLO, Maronda Homes, Inc., of Florida and AIG Claim Services, Inc., Appellees.
No. 1D07-1773.
District Court of Appeal of Florida, First District.
September 15, 2008.
Rehearing Denied October 29, 2008.
*356 Lamar D. Oxford and Alan D. Kalinoski of Dean, Ringers, Morgan & Lawton, Orlando, for Appellants.
Steven M. Meyers of Meyers, Stanley & Waters, Orlando, for Appellee Jose Caraballo.
Margaret E. Sojourner of Langston, Hess, Bolton, Shepard & Augustine, P.A., Maitland, for Appellees Maronda Homes, Inc., of Florida and AIG Claim Services, Inc.
THOMAS, J.
In this workers' compensation appeal, the question presented is whether a claimant's unreported income to the Internal Revenue Service is included in the definition of wages when calculating average weekly wage. We agree with Appellants that the legislature did not intend to include unreported income in its definition of wages contained in section 440.02(28), Florida Statutes (2007). We find that unreported income does not qualify as "wages earned and reported for federal income tax purposes" and cannot be the basis for calculating average weekly wage under section 440.14, Florida Statutes.

Facts and Procedural History
In 1991 Claimant began receiving social security disability benefits for injuries sustained in an explosion. In 2004, Claimant became employed by Rolando Mendez, a subcontractor of Appellant Fast Tract Framing (Fast Tract) which, in turn, was a subcontractor of Appellee Maronda Homes. Claimant was paid in cash by Mr. Mendez and never filled out an employment application, W-9 Form, or any other tax or employment document. Mr. Mendez did not withhold any federal taxes from Claimant's income, and Claimant never reported his income to the Internal Revenue Service.
Claimant suffered a compensable accident during his employment with Mr. Mendez. Claimant then filed a petition for workers' compensation benefits against Maronda Homes, which denied compensability, alleging that it was not Claimant's employer and it had no workers' compensation insurance coverage for him. Claimant later filed a petition against Fast Tract as the statutory employer.
At the merits hearing, Claimant requested temporary partial disability benefits, temporary total disability benefits, a determination of his average weekly wage and compensation rate, payment of all medical bills, authorization for further medical treatment, penalties, interest, costs and attorneys' fees. Fast Tract raised numerous defenses, including its argument that Claimant had earned no wages as defined by section 440.02(28), Florida Statutes; therefore, no benefits were due.
The Judge of Compensation Claims (JCC) found that Fast Tract was Claimant's statutory employer under section 440.10(1)(b), Florida Statutes, and was responsible for providing Claimant's workers' compensation benefits. It further found, based on Claimant's undisputed testimony, that Claimant's average weekly wage was $280. The JCC ordered Fast Tract and its carrier to pay Claimant full temporary total disability benefits for the entire 104-week period provided for in chapter 440, Florida Statutes, all outstanding medical bills related to the accident, and his attorneys' fees and costs.

Analysis
The issue raised in this case is an issue of law; therefore, our standard of review is de novo. Tillman v. State, 934 So.2d 1263, 1269 (Fla.2006).
Florida's workers' compensation law is purely a creature of statute. In construing the statute, we first consider the plain *357 meaning of the text. Tillman, 934 So.2d at 1269. If this meaning is unambiguous "and conveys a clear and definite meaning, that meaning controls unless it leads to a result that is either unreasonable or clearly contrary to legislative intent." Id.
Under the separation of powers requirement of our state's constitution, when interpreting a statute, it is not the judiciary's prerogative to question the merit of a policy preference or to substitute its preference for the legislature's judgment. Art. II, § 3, Fla. Const. As the supreme court stated in State v. Rife,
[w]hen faced with an unambiguous statute, the courts of this state are `without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.' This principle is `not a rule of grammar; it reflects the constitutional obligation of the judiciary to respect the separate powers of the legislature.'
789 So.2d 288, 292 (Fla.2001) (citations omitted). Thus, Claimant's bald assertion that requiring him to report his income to the government for income tax purposes is "abominable" public policy is a debate for the legislature and not a factor in our analysis. Claimant further asserts that Fast Tract and Maronda Homes provide no legal authority to support their argument that Claimant earned no wages and therefore no benefits were due; however, section 440.02 is the paramount legal authority on which we must rely in deciding workers' compensation cases. It is clear and unambiguous, and provides in relevant part:
`Wages' ... includes only the wages earned and reported for federal income tax purposes on the job where the employee is injured ... and gratuities to the extent reported to the employer in writing as taxable income received in the course of employment from others than the employer....
§ 440.02(28), Fla. Stat. (emphasis added).
Claimant asserts that the phrase "reported for federal income tax purposes" simply means that a worker must ensure that his employer, not the Internal Revenue Service, is informed of his income. Thus, Claimant would have us read the first part of section 440.02(28) as "`Wages'... includes only the wages earned and reported [to the employer] for federal income tax purposes." We cannot accept Claimant's invitation to rewrite the statute in this manner, as this would be a violation of the separation of powers.
It is simply a matter of common sense that persuades us that it is unreasonable to read section 440.02(28) as addressing wages reported only to the employer and not the IRS. Here, Mr. Mendez did not need Claimant to report to him, as he obviously knew how much income he paid Claimant. In addition, we note that the legislature expressly requires that employees accepting tips notify their employer of taxable income, not simply the money itself: "`Wages' ... includes ... gratuities to the extent reported to the employer in writing as taxable income received in the course of employment from others than the employer...." § 440.02(28), Fla. Stat. (emphasis added).
Claimant also argues that section 440.02(28) has no impact on the proper interpretation of section 440.14. Relying on Vegas v. Globe Security, 627 So.2d 76 (Fla. 1st DCA 1993), Claimant asserts that it is debatable whether section 440.02(28) modifies section 440.14. While we recognize that section 440.14, which provides the method for calculating average weekly wage, contains no language suggesting it is calculated by using only income reported *358 to the IRS, we find Claimant's argument unpersuasive and Globe Security distinguishable. In Globe Security, the issue was whether concurrent income was included in calculating average weekly wage; this court held that the statute's 1990 amendment did not change the prior substantive law contained in section 440.14.
By contrast, here we confront the question of whether "wages" includes income which has been unreported for federal income tax purposes. We find that the more specific definition of wages in section 440.02(28) requires the conclusion that Claimant received no wages for calculating his average weekly wage; thus, the definition of average weekly wage contained in section 440.14 is irrelevant and certainly not dispositive. In other words, we do not face a decision of how much income Claimant earned and over what period of time; we must simply determine whether Claimant earned any wage, as defined in section 440.02(28).
In Corkery v. Best Wings of Cape Coral, 707 So.2d 884 (Fla. 1st DCA 1998), where we addressed this issue after the statute was amended in 1990, we held that unreported tips to the IRS cannot be included in an average weekly wage calculation:
Because the tips that she contends should have been treated as additional wages were not reported for federal income tax purposes, they do not qualify as "wages." In the circumstances, we need not decide whether Ms. Corkery proved that she met the additional requirement of reporting gratuities "to the employer in writing as taxable income received in the course of employment from others than the employer." § 440.02(24), Fla. Stat. (1995). We affirm the denial of the petition insofar as it sought recalculation of average weekly wage.
Id. at 885 (emphasis added). Thus, in our most recent holding interpreting the definition of wages, we recognized that the legislature requires claimants seeking to establish their average weekly wage report all wages for federal income tax purposes and, if gratuities are involved, the employer must be informed of the amount as "taxable income." Id.
We find further support in Value Rent A Car v. Liccardo, 603 So.2d 680, 682-83 (Fla. 1st DCA 1992) ("The revised statutory language concerning gratuities indicates legislative intent that employers and carriers should receive adequate notice of all income received by employees.... Such knowledge is essential to rate setting for workers' compensation coverage, as well as for federal tax and social security purposes."). Contrary to Claimant's argument that an employee must report his income to his employer, we find that Liccardo supports our view that, in order to demonstrate that Claimant's income constitutes wages under sections 440.02(28) and 440.14, Claimant is required to show that he reported his wages for federal income tax purposes.
As noted, Claimant forcefully asserts that our interpretation of wages would produce an unfair and "abominable" public policy. Fast Tract asserts that it would likewise be "abominable" to interpret the statute to allow Claimant to obtain workers' compensation benefits after receiving unreported cash income while obtaining social security disability benefits. We leave such determinations to the branch of government authorized to make public policythe legislature.

Conclusion
We reverse the JCC's order granting Claimant temporary total disability payments based on an average weekly wage, because we find that Claimant received no wages as defined in section 440.02(28), *359 Florida Statutes. We affirm all other issues raised.
AFFIRMED in part, REVERSED in part, and REMANDED.
LEWIS, J., concurs; PADOVANO, J., dissents with written opinion.
PADOVANO, J., dissenting.
I believe that the majority has misinterpreted the statutory definition of the term "wages" and that the decision in this case fails to take into account other statutes that have a bearing on the issue. Moreover, I fear that the decision will encourage employers to hire undocumented aliens and to compensate them with unreported cash payments. For these reasons, I dissent.
Section 440.02(28), Florida Statutes, defines the term "wages" to include only those wages that are reported for federal income tax purposes. However, the statute is worded in the passive voice; it does not specify whether the report is to be made by the employee (in a tax return) or by the employer (in a payroll tax return). Moreover, the statute does not specify the party or entity to whom the report is to be made. It requires the employee to report gratuities "to the employer" but on the subject of wages it merely states that they must be "earned and reported for federal income tax purposes." I cannot read this language as if it says that earnings can count as wages only if the employee reports them to the Internal Revenue Service. It appears to me that this conclusion is not supported by the text.
The majority's interpretation of the term "wages" in section 440.02(28) is also at odds with other provisions of the Workers' Compensation Act. For example, it is not consistent with the statutory definition of an "employee," which expressly includes undocumented aliens:
"Employee" means any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract for hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes, but is not limited to, aliens and minors.
§ 440.02(15)(a), Fla. Stat. (2004). By the text of this statute, an undocumented alien can be an "employee" for the purpose of obtaining workers' compensation benefits even if he or she is employed "unlawfully." But, if the majority is correct, there is a catch that will make an undocumented worker's eligibility irrelevant. A worker who is unlawfully employed would be qualified to receive benefits, but he could succeed in obtaining benefits only if he were to report the existence of his unlawful employment to the government. The worker would be covered only in a theoretical sense. As a practical matter, the employer would never have to pay. With respect for the opinion of my colleagues, I do not think that these statutes can be read in isolation as if they do not relate to each other.
It is significant in my view that the employer had no system in place for the claimant to report his income, and that he did not provide the claimant with tax forms when the employment began. The claimant and the employer did not have a typical arrangement; no wage reporting or tax forms were provided or filed. Indeed, the arrangement was illegal, because the employer failed to deduct payroll taxes or other taxes. Thus, while the Internal Revenue Service may not have been made aware of the claimant's earnings, the employer obviously knew how much he was paying the claimant in cash, under the unlawful payment arrangement he himself had devised.
*360 I am concerned not only by the errors I have identified here, but also by the precedent the court has set in this case. It seems to me that the effect of the decision is to immunize employers who elect to hire undocumented aliens. They will never have to pay for workplace injuries, because their employees are not receiving "wages." It will be as if these employees are not really working and not really getting hurt on the job. This is not fair to employers who are hiring employees lawfully, paying their employment taxes, and factoring in the cost of paying for injuries their employees might sustain on the job.
I would affirm the order awarding the claimant benefits.