WETHERELL, J.
 

 In this workers’ compensation appeal, the Employer/Carrier (E/C) argues that the Judge of Compensation Claims (JCC) erred by: 1) awarding Claimant temporary indemnity benefits; 2) denying the E/C’s motion to amend its pre-trial stipulation after the final hearing to assert a misrepresentation defense; and 3) finding Claimant had an average weekly wage (AWW) of $290.00. For the reasons explained below, we reverse as to the first issue, and affirm as to the second and third issues.
 

 
 *1274
 

 Factual Background
 

 Claimant suffered a compensable accident on September 4, 2008, which necessitated the amputation of the lower portion of his left leg and the use of a prosthesis. Claimant sought a determination of the correct AWW for calculating the amount of catastrophic temporary total indemnity benefits to which he claimed entitlement. The E/C contended that Claimant’s AWW was zero due to his failure to report his wages for income tax purposes as required by section 440.02(28), Florida Statutes (2008).
 

 Claimant testified that he was neither a United States citizen nor resident alien, and that he did not have, nor had he ever used, a Social Security number. He also testified that the Employer never required him to fill out any paperwork or provide documentation of his residency/citizenship status prior to his being hired, that he did not know whether the Employer withheld payroll taxes or reported his wages to the Internal Revenue Service (IRS), and that the Employer did not give him a W-2 form. The Employer admitted that he neither reported Claimant’s wages to the IRS nor paid any payroll taxes on him.
 

 Claimant testified that he was paid $58.00 in cash per day, five days a week, which equates to $290.00 per week. The Employer testified that Claimant was paid $8.00 per hour and that he worked seven to eight hours a day, but only two to four days a week. The JCC apparently accepted Claimant’s testimony as being more credible because, as noted below, she determined his AWW to be $290.00.
 

 Claimant testified that, with the help of a certified public accountant (CPA), he filed a tax return for 2008, and that on his attorney’s advice, the income he reported on his 2008 tax return reflected only the wages he was paid by the Employer and omitted the wages he earned that year from previous employers. On cross-examination during the final hearing, Claimant acknowledged that he filed the tax return solely for the purpose of obtaining workers’ compensation benefits.
 

 Claimant’s CPA testified that he prepared and filed a tax return on Claimant’s behalf for wages earned in 2008, including a Form W-7 (application for IRS tax identification number), Form 1040, Schedule C-EZ (net profit from business form), and Schedule SE (self-employment tax form). The CPA testified that he filed these forms because the Employer did not provide Claimant with a W-2 and it therefore became Claimant’s responsibility to report his earnings to the IRS. The return indicated earnings of $3,770.00, which amount was based on $58.00 per day multiplied by five days per week for thirteen weeks. The CPA executed an affidavit attesting that by filing a tax return, Claimant “has reported his income to the federal government as the term ‘reported’ is generally understood in the accounting and tax-preparing community.”
 

 One week after both sides rested and the record was closed, the E/C filed a motion to amend its pre-trial stipulation, asserting that the testimony of Claimant and his accountant during the final hearing revealed that Claimant had not reported all of his 2008 taxable income to the IRS, which, the E/C argued, constituted a violation of section 440.105(4)(b), and thus required a forfeiture of all workers’ compensation benefits pursuant to section 440.09(4)(a). The JCC did not rule on this motion.
 

 In her final order, the JCC found that Claimant “reported his 2008 earnings from the Employer to the IRS in [January 2009]”; that “the cash payments made to him constitute ‘wages’ as defined in F.S. 440.02(28)”; and that the “unrefuted evi
 
 *1275
 
 dence” showed Claimant’s AWW is $290.00. The final order also awarded Claimant temporary indemnity benefits for the period of September 4, 2008, through March 4, 2009.
 

 The E/C filed a motion for rehearing, arguing that the JCC misapprehended this court’s decision in
 
 Fast Tract Framing, Inc. v. Caraballo,
 
 994 So.2d 355 (Fla. 1st DCA 2008), in finding Claimant complied with section 440.02(28), and that Claimant forfeited his rights to all workers’ compensation benefits by allegedly violating section 440.105(4)(b). The JCC denied this motion.
 

 Analysis
 

 The JCC’s Award of Indemnity Benefits
 

 The E/C argues that the JCC’s award of indemnity benefits was improper because the parties and the JCC agreed at the final hearing that the only issue for determination at that time was Claimant’s correct AWW. In his brief, Claimant concedes this was indeed what occurred at the hearing. Because the record supports the E/C’s contention and Claimant’s concession, the award of indemnity benefits was error, and we reverse the final order as to this issue.
 

 The E/C’s Misrepresentation Defense
 

 The E/C argues that the JCC abused her discretion in denying its post-hearing motion to amend its pre-trial stipulation to include a misrepresentation defense pursuant to section 440.105(4)(b). The E/C contends that it could not have asserted the defense any sooner because it did not become aware of the defense until after Claimant and his accountant testified at the final hearing that Claimant’s tax return included only the wages he was paid by the Employer, and excluded wages that he earned during 2008 with prior employers.
 

 The record, however, establishes that with due diligence the E/C should have, or at least could have, known of this potential defense prior to the final hearing. Claimant was deposed regarding his prior employment and the tax returns and an affidavit from the CPA were produced pri- or to the hearing. The CPA was listed by Claimant as a witness on the pre-trial stipulation, but he was not deposed by the E/C. Additionally, the E/C was clearly aware of the factual basis for the defense at the final hearing because during closing arguments, the E/C’s attorney made reference to Claimant’s incomplete tax return, and argued that the incompleteness rendered the return insufficient to satisfy the reporting requirement in section 440.02(28).
 

 In light of these circumstances, the JCC did not abuse her discretion in denying the E/C’s motion to amend its pre-trial stipulation to include a potential misrepresentation defense after the record had closed.
 
 Cf. Isaac v. Green Iguana, Inc.,
 
 871 So.2d 1004 (Fla. 1st DCA 2004) (discussing the due process concerns raised by allowing an E/C to amend the pre-trial stipulation to raise a fraud defense for the first time on the day of the final hearing).
 

 Average Weekly Wage
 

 The E/C contends that the JCC committed two errors with respect to the AWW issue. First, the E/C argues that the JCC incorrectly found that there was “unrefut-ed” evidence that Claimant’s AWW was $290.00. Second, the E/C argues that the JCC erred by finding that Claimant complied with the reporting requirement in section 440.02(28) in order to have wages upon which his AWW could be calculated.
 

 With respect to the first point, we agree that the JCC’s characterization of the evidence of Claimant’s AWW as “unre-futed” was incorrect in light of the Employer’s contradictory testimony concerning Claimant’s rate of pay and number of
 
 *1276
 
 days worked. It is clear, however, that the AWW calculated by the JCC was based upon Claimant’s testimony, which the JCC accepted as credible. Thus, because competent substantial evidence supports the JCC’s AWW calculation, any error concerning the JCC’s finding that the evidence was “unrefuted” was harmless.
 

 With respect to the second point, although the E/C acknowledges that Claimant filed with the IRS the tax forms testified to by his accountant, the E/C argues this was insufficient to satisfy the statutory reporting requirement because Claimant did not file what the E/C contends were the
 
 correct
 
 forms. In support of this argument, the E/C relies on its interpretation of various IRS publications that were not introduced as evidence at the final hearing below, and in so doing, the E/C essentially asks us to substitute our judgment for the unrefuted testimony of a CPA regarding what forms Claimant was supposed to file given his tax and immigration status.
 

 In essence, the E/C argues that section 440.02(28) requires a claimant to comply with the precise IRS statutory/regulatory provisions applicable to his tax situation, and if he does not, the claimant has no wages under the statute. The JCC rejected this argument, stating:
 

 I decline to read F.S. 440.02(28) as requiring Claimant to be knowledgeable about the IRS Tax Code and Tax Regulations to the
 
 technical degree
 
 suggested by the Employer/Carrier with respect to the “reporting” of earnings. I find that no authority — statutory or case law, was presented to support the Employer/Carrier’s position that an unsophisticated working person should be held to be responsible for knowledge of the myriad of regulations contained in the U.S. Tax Code, or that the Legislature intended that a JCC decipher the U.S. Tax Code when determining whether an injured worker “reported” his earnings to the IRS.
 

 (emphasis in original).
 

 We agree with the JCC that section 440.02(28) does not require the level of precision urged by the E/C. The statute provides in relevant part:
 

 “Wages” mean the money rate at which the services rendered is recompensed under the contract of hiring in force at the time of injury and includes only the wages earned and
 
 reported for federal income tax purposes
 
 on the job where the employee is injured and any other concurrent employment where he or she is also subject to workers’ compensation coverage.
 

 (emphasis added).
 

 In
 
 Fast Tract,
 
 we gave the statute its plain meaning and held, over a spirited dissent, that section 440.02(28) requires the claimant “to show that he reported his wages for federal income tax purposes.” 994 So.2d at 358. We did not address in that case the issue of what constitutes “reported” for the statute’s purposes because there, unlike here, the claimant failed to file a tax return or any other documentation with the IRS.
 
 Id.
 
 at 356. We did, however, make clear that the statute required the claimant’s wages to be reported
 
 to the IRS,
 
 and not just his employer.
 
 Id.
 
 at 357. Although the claimant argued that “requiring him to report his income to the government for income tax purposes [was] ‘abominable’ public policy,”
 
 id.,
 
 and the dissent asserted that based upon our holding an illegal or undocumented alien “could succeed in obtaining [workers’ compensation] benefits only if he reported the existence of his unlawful employment to the government,”
 
 id.
 
 at 359 (Padovano, J., dissenting), we held that these policy arguments should be addressed to the legislature.
 
 Id.
 
 at 358.
 

 
 *1277
 
 This case is distinguishable from
 
 Fast Tract
 
 and
 
 Centimark Corp. v. Gonzalez,
 
 10 So.3d 644 (Fla. 1st DCA 2009), in which the claimants failed to report their income to the IRS. Here, Claimant timely filed a tax return in which he informed the IRS of the wages that he earned with the employer for whom he was working when he was injured. This satisfied the reporting requirement in section 440.02(28), and because the JCC’s findings on this issue are supported by competent substantial evidence, we affirm the AWW established in the final order.
 

 Conclusion
 

 For the foregoing reasons, we affirm the JCC’s order in all respects except for the award of temporary indemnity benefits. On that issue, we reverse and remand for further proceedings consistent with this opinion.
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 LEWIS and THOMAS, JJ., Concur.