KAHN, J.,
dissenting.
Because I conclude that the majority decision here, although entered in the utmost good faith, portends a trend that would upset decades of settled Florida law concerning the ability of parties to litigation to control issues presented, I respectfully dissent. This workers’ compensation matter does not turn upon any application of our decision in Fast Tract Framing, Inc. v. Caraballo, 994 So.2d 355 (Fla. 1st DCA 2008). Instead, the case should be resolved by resort to basic tenets of due process and settled Florida law.

PROCEDURAL BACKGROUND

In a pre-trial stipulation duly filed with the Judge of Compensation Claims (JCC), the parties agreed that Salinas’ average weekly wage (AWW) would be $600.00. Appellee, the employer, never moved for relief from that stipulation, nor put on any evidence at all to support a finding sufficient to have afforded such relief. Claimant testified during the course of the final hearing that he has no social security number and has never filed a federal income tax return while living in the United States. Aso, claimant acknowledged that he would be classified, depending upon one’s particular view, as an undocumented worker or an illegal alien.
In ruling upon claimant’s petition for temporary partial disability (TPD) benefits, the JCC viewed the medical testimony as supportive of that claim. Nonetheless, the JCC denied the claim, finding, sua sponte, that because claimant was an illegal immigrant who did not report his income to the Internal Revenue Service (IRS), claimant was “precluded from receiving TPD benefits for this period, as his *603 non-reported wages [could] not be the basis for calculating the AWW.” From that denial of benefits claimant takes this appeal, arguing the parties entered into a valid pretrial stipulation concerning AWW, no defenses had ever been raised on the AWW issue, and claimant had no opportunity to be heard on the issue.

ANALYSIS

Claimant, having negotiated a pretrial stipulation, removing certain elements of the claim from consideration by the JCC, found himself subjected to a deprivation of his fundamental right to due process. The notion that only those matters actually presented to a judicial officer are subject to adjudication is not foreign to workers’ compensation matters:
Due process concerns preclude a ruling on matters which have not been placed at issue, since the parties are entitled to notice so that they may fairly present their case. Florida Power Corp. v. Hamilton, 617 So.2d 333, 334 (Fla. 1st DCA 1993). An order that is not in accord with the understanding with which the workers’ compensation hearing was undertaken and participated in is a denial of due process and must be reversed. Munroe Memorial Hospital v. Thompson, 388 So.2d 1338 (Fla. 1st DCA 1980).
Southeast Recycling v. Cottongim, 639 So.2d 155, 157 (Fla. 1st DCA 1994); see also Reynolds v. Skagfield Corp., 887 So.2d 434, 435 (Fla. 1st DCA 2004) (holding that a JCC improperly determines compensability of a condition when the issue is not before the JCC); Commercial Carrier Corp. v. LaPointe, 723 So.2d 912, 914 (Fla. 1st DCA 1999) (holding that JCC erred in awarding benefits not listed as being at issue in pretrial stipulation); Holiday Inn v. Sallee, 496 So.2d 227, 229 (Fla. 1st DCA 1986) (holding that JCC rules only on particular issues presented by parties for resolution). Accordingly, because the JCC reached out to an issue not properly before him, the order should be reversed with directions that the TPD benefits be awarded.
One would struggle to envision a concept more fundamental to our legal system than that of due process; this case, however, does in fact raise another, and somewhat related, bedrock issue. That issue concerns the right of parties to litigation to enter into binding stipulations concerning the issues to be presented to a tribunal. Before detailing the case law on this point, I would note that the cases cited by the majority are not in conflict with the proposition just stated.
The first case relied upon by the majority, Farnam v. U.S. Sugar Corp., does indeed hold that a JCC did not err in rejecting a stipulation where competent substantial evidence supported a contrary finding. 9 So.3d 41 (Fla. 1st DCA 2009). Notably absent from this decision, however, is any indication of the procedural posture of that case. For instance, did one or both of the parties seek relief from the stipulation? Did developments at trial unfold in such a way so as to amend the stipulation and place at issue a matter that had been preliminarily dealt with by the stipulation? The Famam opinion contains no discussion of these issues, nor any analysis of the basis for rejecting a stipulation. Sapp v. Berman Bros. is in-apposite to the present matter because that case applied the well-known rule that stipulations may be set aside upon a showing of fraud, overreaching, misrepresentation, or some other basis that would void the agreement. 884 So.2d 1080, 1082 (Fla. 1st DCA 2004). These situations do not appear in the present case, and no party to this litigation has ever sought to avoid the agreement. Of course, even in *604 those limited cases where a JCC may countenance abrogation of the stipulation, the parties must be afforded notice and opportunity to present evidence and argument concerning such abrogation. See Jacobs v. Volker Stevin Constr., 609 So.2d 132, 133 (Fla. 1st DCA 1992).
Decades ago, our supreme court decided the case that stated the durable rule concerning pretrial stipulations: “A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court.” Gunn Plumbing, Inc. v. Dania Bank, 252 So.2d 1, 4 (Fla.1971). The rule affording a high status to stipulations is not merely a procedural nicety. Instead, this rule memorializes one of the cornerstones of our method of dispute resolution. Our system, commonly referred to, although now with some apparent disdain, as the adversary system, posits that learned opponents, standing upon an equal procedural footing, will make their best professional efforts to resolve a matter favorably for their respective clients. These efforts involve not only citations to law, and presentation of evidence; they also encompass pretrial strategy, including negotiations of pretrial stipulations. Indeed, Florida courts will even uphold stipulations where the matters under stipulation would not necessarily have been available upon a strict reading of law, and in the absence of the stipulation. For instance, in Davis v. State, our supreme court observed that polygraph evidence, long ruled unreliable and inadmissible in our courts, may be admitted in a criminal case when the parties had stipulated to admission of such test results. 520 So.2d 572, 574 (Fla.1988). The supreme court in Davis viewed a stipulation to admit polygraph evidence as a “waiver by both parties of evidentiary objections as to the lack of scientific reliability.” Id. In Friendly Homes of the South. Inc., v. Fontice, the court observed that a post-filing stipulation to arbitrate, duly executed by the parties, would control even where the arbitration provision in the underlying contract at dispute in the matter may well have been ineffective. 932 So.2d 634, 637 (Fla. 2d DCA 2006).
The stipulation here removed a matter, otherwise at dispute, from consideration by the JCC. The matter was resolved between the parties, and no suggestion has been made that the rights or interests of any third party was affected by the stipulation. Moreover, we do not know, and the record does not indicate, what motivations the employer had here in entering the stipulation as to AWW. As judges, we simply do not have enough knowledge to second guess or question the motivations of a party to a stipulation, unless the prerequisite showing of fraud, overreaching or likewise, has been raised and supported by evidence. For all I know, as someone who has merely read the briefs and record, the employer here may have entered the stipulation to avoid any inquiry or questions into whether the employer itself followed the proper IRS procedures with regard to reporting income and withholding taxes. On the other hand, the employer here may have withheld and reported claimant’s wages in accordance with federal law. Indeed, that Mr. Salinas failed to file an income tax return does not definitively prove his wages were not reported to the IRS. Had the issue been actually set for consideration by the JCC, evidence may have been adduced that the employer properly withheld and reported wages. I do not make these observations as any sort of prediction as to the true facts. I simply note that, when entering the pretrial stipulation, the employer here must have had reasons that seemed sound from the perspective of both litigation tactics and busi *605 ness. As a judge, I don’t feel empowered to squash such a decision, made between private litigants, and not involving third-party rights.
The stipulation here was quite clear, was not ambiguous, and was not in want of clarification or qualification. See Yeakle v. Yeakle, 12 So.3d 884, 886 (Fla. 4th DCA 2009) (relying upon Steiner v. Steiner, 638 So.2d 174, 175 (Fla. 1st DCA 1994), to observe a court must not disturb a stipulation “unless found to be ambiguous or in need of clarification, modification or interpretation”). A party seeking to enlist the aid of the court to interpret or to abrogate an apparently binding stipulation “must make a reasonable motion to withdraw the stipulation supported by an affidavit showing good cause.” Henrion v. New Era Realty IV, Inc., 586 So.2d 1295, 1298 (Fla. 4th DCA 1991). Where an agreement was voluntarily undertaken, as we must presume the agreement here was, and the record lacks indication of fraud, misrepresentation, or mistake of fact, the court should afford no relief. Id.; see also Gunn Plumbing, 252 So.2d at 1; Curr v. Helene Transp. Corp., 287 So.2d 695 (Fla. 3d DCA 1973).
Having noted that nothing in this record, nor in the arguments made by the appellee, supports abrogation of the freely made stipulation here, I would also observe that appellee has waived its right to rely upon our Caraballo decision. “Pretrial stipulations prescribing the issues on which a case is to be tried are binding upon the parties and the court, and should be strictly enforced.” Lotspeich Co. v. Neogard Corp., 416 So.2d 1163, 1165 (Fla. 3d DCA 1982). Indeed, “[a] stipulation that limits the issues to be tried ‘amounts to a binding waiver and elimination of all issues not included.’ Esch v. Forster, 123 Fla. 905, 168 So. 229, 231 (1936).” Broche v. Cohn, 987 So.2d 124, 127 (Fla. 4th DCA 2008). Parties to litigation give up legal rights through stipulation and waiver on a daily basis. The public policy of this state encourages the same, and voluntary participation in such actions violates no known principle of law. Indeed, “waiver, by definition, is the intentional relinquishment of a known legal right.” Unimed Lab., Inc. v. Agency for Health Care Admin., 715 So.2d 1036, 1037 (Fla. 3d DCA 1998).
For these reasons, I dissent from the majority’s opinion, and I would reverse the order under review with instructions that temporary partial disability benefits be awarded claimant.