PER CURIAM.
In this workers’ compensation case, the Employer/Carrier (E/C) appeals an order of the Judge of Compensation Claims (JCC) awarding palliative care to Claimant *1007 in reliance on the opinions of expert medical advisor (EMA) Dr. Lang, and striking the E/C’s affirmative defense of fraud. For the reasons set forth herein, we REVERSE these rulings as premature. The facts are as follows.
Factual Background
In December 2000, Claimant injured his back at work, and the E/C accepted the injury as compensable. The E/C authorized Dr. Ibars, who placed Claimant at maximum medical improvement (MMI) in 2001, provided palliative care in 2002, and referred Claimant to pain management in 2008. The E/C then authorized Dr. De-Meo, who provided palliative care until August 2010, when, apparently having been shown surveillance video of Claimant obtained by the E/C, Dr. DeMeo opined the compensable injury is no longer the major contributing cause (MCC) of any need for treatment. Based on Dr. De-Meo’s opinion, the E/C denied further medical treatment. Claimant filed petitions for benefits (PFBs) seeking further treatment with Drs. Ibars or DeMeo, but the E/C contested the PFBs (presumably again based on Dr. DeMeo’s opinion).
On April 27, 2011, Claimant went to an unauthorized doctor, Dr. Mouhanna. Dr. Mouhanna prescribed medication and recommended further studies and treatment. In July 2011, a hearing was held at which Claimant then attempted to introduce into evidence, in support of his PFBs, a medical opinion from Dr. Mouhanna that the work injury is the MCC- of Claimant’s need for treatment. The JCC ruled (and the ruling is not challenged) that Dr. Mouhanna was not an independent medical examiner (IME) in this case. The JCC reserved ruling, however, as to whether Dr. Mouh-anna could be deemed authorized as having provided emergency treatment.
Despite having reserved ruling on the admissibility of Dr. Mouhanna’s medical opinions, the JCC sua sponte appointed an expert medical advisor (EMA) to resolve, as he wrote in the order appointing the EMA, “the conflicting opinions between Dr. Mouhanna (if found to be admissible)[,] Dr. Ibars, [and] Dr. Demeo.” The EMA appointed at that time was later disqualified, and replaced with a second doctor to serve as EMA. The subsequent EMA’s opinion was that the work injury is the MCC of Claimant’s continuing need for care. The E/C asserted, however, that Claimant had misrepresented his medical history to that EMA, and by doing so had forfeited all workers’ compensation benefits, as stated in sections 440.09(4) and 440.105(4)(b)l., Florida Statutes. In the final order of April 2012, the JCC found Dr. Mouhanna “provided treatment on ‘an emergent basis,’ ” accepted the EMA’s opinion on MCC, and struck the E/C’s fraud defense as untimely.
Legal Analysis
Regarding the fraud defense, there is no specific time period in which a fraud' defense must be asserted, because “a party is not required to anticipate false testimony from the opposing party, and is, therefore, not required to discovér evidence which would refute false testimony.” Oakdell, Inc. v. Gallardo, 505 So.2d 672, 675 (Fla. 1st DCA 1987), quoted in E. Airlines v. Griffin, 654 So.2d 1194, 1200 (Fla. 1st DCA 1995) (Ervin, J., concurring and dissenting). The proper inquiry for the JCC is whether the E/C’s assertion of the fraud defense violated Claimant’s right to due process. See Isaac v. Green Iguana, Inc., 871 So.2d 1004 (Fla. 1st DCA 2004) (holding failure to assert fraud defense pretrial violates other party’s right to due process). Although timeliness may play into, due process considerations, here the JCC rejected the fraud defense as “untimely” without any indication, in either the order or the record, that he had considered due process. This was error. Such error was not harmless because even *1008 though—as will be discussed infra—no EMA should have been appointed (and thus Claimant should never have seen the subsequent EMA), Claimant could nonetheless be barred from receiving benefits if he is found to have made false statements for the purpose of obtaining workers’ compensation benefits (the reversal of the JCC’s error in appointing an EMA does not erase the fact of what took place at the evaluation, or otherwise estop the E/C from asserting a fraud defense; there was no “entrapment” forcing Claimant to make fraudulent statements). On remand, the JCC is permitted to receive evidence on, and rule on, the due process component— and the merits, if the JCC reaches them— of the fraud defense.
Regarding the disqualification of the first EMA, we affirm without further comment. Regarding the JCC’s appointment of an EMA before having received into evidence the medical opinion of Dr. Mouhanna—the opinion that created the conflict necessitating resolution by EMA— was undoubtedly premature, but the prematurity of that contingent appointment was cured by his ultimate ruling that Dr. Mouhanna’s medical opinion was admissible, a ruling evidenced by the April 2012 order. Notwithstanding that cure, there is reversible error at the trunk of the EMA tree—the JCC erred in admitting Dr. Mouhanna’s medical opinion on this record, over the intent of the Legislature set forth in section 440.13(5)(e), Florida Statutes—and, thus, on remand the EMA’s medical opinion on MCC should be excluded, and the JCC should not rely on it.
Regarding the admissibility of Dr. Mouhanna’s medical opinion, there is reversible error. Section 440.18(5)(e) states that the only admissible medical opinion evidence in workers’ compensation cases is that from an authorized treating provider, an IME, or an EMA. Because some medical care from unauthorized providers can later be determined to be covered by workers’ compensation by operation of law, such as that care given in emergency situations or in a period during which an E/C wrongfully denies medical care, such providers’ medical opinions can become admissible as a matter of law. To demonstrate that the care at issue is or was authorized as a matter of law, however, claimants must first convince the JCC, via admissible evidence, of certain prerequisite facts, set forth in section 440.18(2)(c), Florida Statutes. See Parodi v. Florida Contracting Co., Inc., 16 So.3d 958 (Fla. 1st DCA 2009). These facts are akin to elements of proof, and as such the law is substantive; accordingly, the facts required of each claimant are those set forth in the statute in effect on that claimant’s date of accident. See generally Butler v. Bay Ctr./Chubb Ins. Co., 947 So.2d 570, 572 (Fla. 1st DCA 2006) (“Substantive law prescribes applicable duties and rights, while procedural law prescribes the means and methods by which these duties and rights are applied and enforced. Whereas parties have vested rights in the substantive law, they do not have vested rights in the procedure. As such, procedural or remedial changes to law apply without regard to the date of a claimant’s accident.” (citations omitted)).
Here, the applicable version of section 440.13(2)(c) requires Claimant to prove that the care at issue “is compensa-ble and medically necessary,” that there was “a specific request for the treatment,” and that “the employer or carrier [was] given a reasonable time period within which to provide the treatment or care.” (Notably, the version applicable to Mr. Parodi also required proof that the care is “initial,” and “is in accordance with established practice parameters and protocols of treatment as provided for in this chapter,” which the Parodi opinion characterized as *1009 “reasonable”-ness. Additionally, both versions of section 440.13(2)(c) require a claimant seeking “to recover any amount personally expended for the treatment or service” to prove either that he “has requested the employer to furnish that treatment or service and the employer has failed, refused, or neglected to do so within a reasonable time,” or that “the nature of the injury requires such treatment, nursing, and services and the employer or his or her superintendent or foreman, having knowledge of the injury, has neglected to provide the treatment or service.” Claimant here is not seeking reimbursement of personal expenditures.) Once these facts are proven to the satisfaction of the JCC, the care from unauthorized providers becomes authorized, and only then do the medical opinions of those providers become admissible.
Now, the astute reader will make three observations. First, some of these prerequisite facts — for example, that a claimant made a specific request — are not medical opinions, but can be established by any admissible evidence (including lay testimony). Second, other prerequisite facts — for example, that the unauthorized care is or was compensable (compensability generally indicating that the care is/was causally related to the compensable injury to the degree required by chapter 440)— are matters of medical opinion and as such require medical opinion evidence. And third, section 440.13(5)(e) excludes only medical opinions from certain sources, not testimony or evidence admitted “for fact purposes only” — that is, the source himself is not incompetent to testify; only his medical opinion is inadmissible.
The import of these three observations is that a claimant seeking either to establish that certain care from unauthorized providers should be authorized, or to introduce medical opinions ordinarily excluded by section 440.13(5)(e), can establish the factual circumstances of the care at issue with “fact-purposes only” evidence from the provider of that care, but must also present medical opinions from another source, one who is already qualified under section 440.13(5)(e) to provide medical opinions, to establish (if at issue and challenged) the compensability and medical necessity (and reasonableness, if required by the applicable version of section 440.13(2)(c)) of the care at issue. A claimant cannot use medical opinion evidence barred by section 440.13(5)(e) to “bootstrap” itself — or other medical opinions from the same source — into evidence. To permit such bootstrapping would contravene the legislative intent of section 440.13(5)(e), and potentially violate the separation of powers doctrine, which forbids the court, in interpreting a statute, from “questioning] the merit of a policy preference or ... substituting] its preference for the legislature’s judgment.” Fast Tract Framing, Inc. v. Caraballo, 994 So.2d 355, 357 (Fla. 1st DCA 2008). Once the provider of care in controversy becomes an authorized provider, however, section 440.13(5)(e) no longer bars that provider’s medical opinion. That provider may then be used as a source of medical opinion to support claims for benefits other than authorization of the very care that provider had provided — for example, medical opinions regarding work restrictions that could justify an award of indemnity benefits.
Claimant in this case did not provide admissible medical opinion evidence of compensability (causal relationship) or medical necessity of Dr. Mouhan-na’s care. Therefore, the JCC erred in admitting Dr. Mouhanna’s medical opinion into evidence; it follows there was no conflict of medical opinion, and no need for an EMA. On remand, Claimant should be permitted to obtain and present the missing evidence, not as a second chance, but because as the case progressed below Claim *1010 ant relied — and should be entitled to rely — on the JCC’s favorable ruling admitting Dr. Mouhanna, and in fact is procedurally forbidden from appealing rulings wholly favorable to him. See, e.g., Dep’t of Health v. Fresenius Med. Care Holdings, Inc., 935 So.2d 686, 687 (Fla. 1st DCA 2006) (“An appeal of a wholly favorable judgment must be dismissed.”); cf. Gomez Lawn Serv., Inc. v. The Hartford, 98 So.3d 212, 217 (Fla. 1st DCA 2012) (holding employer had standing to appeal order at least partially adverse to its interests).
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
CLARK, WETHERELL, and MAKAR, JJ., concur.