TAYLOR, Circuit Judge
(dissenting).
Appellant suffered disability as a result of an injury arising out of and in the course of his duties as a volunteer fireman of the City of Altamonte Springs.
In a hearing on his claim for benefits under the workmen’s compensation law, the following facts were established:
At the time of the accident, appellant was regularly employed as a route salesman for a dairy earning an average weekly wage of ninety-five dollars and thirty cents ($95.30). He was also a volunteer fireman of the City of Altamonte Springs rendering services, when needed, in the extinguishing of fires. The city did not pay to him directly any wages for his services as a fireman, but did pay regularly, fifty-five dollars ($55.00) per month to an association of its volunteer firemen, consisting of about fifteen members. This money was paid to secure the services of the firemen. It was accepted by firemen for their services. The association used the money as its members, from time to time, decided — usually in furnishing some sort of entertainment or amusement for its members and their families.
The City of Altamonte Springs secured Workmen’s Compensation coverage for its firemen, including appellant, and the carrier charged and was paid a premium computed on a minimum annual pay of three hundred dollars ($300.00) for each fireman and a rate of one dollar and sixty-nine cents ($1.69) per one hundred dollars ($100.00) of pay.
The deputy commissioner held that appellant was not an employee of the city and denied his claim.
On review, the full Industrial Commission reversed the deputy and held that appellant was an employee of the city at the time of the accident, but a majority of the Commission held that since' claimant received no direct salary, he was not entitled to compensation but he was entitled to expenses and to reimbursement for medical and remedial treatment. One member of the Commission thought that claimant was entitled to compensation based upon his earnings as a milk route salesman.
A majority of this Court affirms the decision of the full Commission. I cannot agree.
If this case related only to volunteer firemen, who may require that they be protected by some form of accident insurance, I would be content to merely note my dissent. But the decision here rendered, or rather the almost contemporaneous decision upon which it is based, is so at variance with my construction of the statute and its effect so disastrous to an increasing number of workers that I feel justified in stating in some detail the reasons for my conclusions.
Since all the members of the Court agree with all the members of the Commission that appellant was an employee of the city at the time of his accident, that question will not be belabored. It is admitted that appellant suffered disability as a result of an accident arising out of and occurring in the course of the performance of his duties as a volunteer fireman of the city, so *15 the only question remaining is his rate of compensation which is governed by the statute. Section 440.15 Florida Statutes, F.S. A. requires compensation to be paid at the rate of sixty percent (60%) of the employee “average weekly wage.” “Average weekly wage” is determined by the application of Section 440.14 Florida Statutes, F.S.A., which is as follows:
“440.14 Determination of pay. — Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall he taken as the basis upon which to compute compensation and shall be determined subject to limitations of subsection (2) of § 440.12 as follows:
“(1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of thirteen weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the said thirteen weeks.
“(2) If the injured employee shall not have worked in such employment during substantially the whole of thirteen weeks immediately preceding the injury, the wages of a similar employee in the same employment who has worked substantially the whole of such thirteen weeks shall be used in making the determination under the preceding paragraph.
“(3) If either of the foregoing methods cannot reasonably and fairly be applied the full time weekly wages of the injured employee shall be used, except as otherwise provided in subsections (4) or (5) of this section.
“(4) If it be established that the injured employee was a minor when injured, and that under normal conditions his wages should be expected to increase during the period of disability the fact may be considered in arriving at his average weekly wages.
“(5) If it be established that the injured employee was a part-time worker at the time of the injury, that he had adopted part-time employment as his customary practice, and that under normal conditions he probably would have remained a part-time worker during the period of disability, these factors may be considered in arriving at his ■ average weekly wages. For the purpose of this subsection the term ‘part-time worker’ means an individual who customarily works less than the full-time hours or full-time work week of a similar employee in the same employment because unable or unwilling to accept full-time work, and does not include any employee who was working on a part-time basis because (a) his employer failed to provide full-time work for him, (b) he was unable to obtain full-time work, or (c) his attendance at school or college did not permit full-time employment.
“(6) If compensation is due for a fractional part of the week, the compensation for such fractional part shall be determined by dividing the weekly compensation rate by the number of days employed per week to compute the amount due for each day.” (Emphasis supplied.)
The purpose of the section is to fix a fair and reasonable formula by which the “average weekly wage” of an injured employee may be readily established.
. The first and simplest method is to use the actual experience of the injured employee for the thirteen weeks immediately preceding the injury as provided in subsection (1). But the statute permits this method of computation only in cases in'which the injured employee “shall have worked in the employment in which he was working at the *16 time of the injury, whether for the same or another employer, dttring substantially the whole of thirteen weeks immediately preceding the injury.[1]’ (Emphasis supplied.) I do not think this subsection can be applied in this case because, to my mind, the underscored language requires the performance of labor for substantially the whole of work days as well as substantially the whole of work weeks. For example, if an employee were allowed to work only one day a week but had worked every Monday for thirteen weeks, we certainly would not say that he had worked substantially the whole of those thirteen weeks. By the same reasoning the employee who works each day but works for substantially fewer hours than the standard in the industry cannot be said to have worked for “substantially the whole” of any day in any of the thirteen weeks, and, it must follow, he did not work in that industry for substantially the whole of the thirteen weeks.
If this conclusion is sound, and to my mind the language has no other meaning, the remainder of this section fits into a coherent scheme for the evaluation of the worker’s loss which is fair and reasonable.
When, as in the case before us, the injured employee has worked only part-time in the employment in which he was injured, his earnings cannot be measured by application of subsection (1) and we proceed to subsection (2) and find a formula which fits the situation like a glove. The part-time employee has not been employed in the industry for substantially the whole of the thirteen weeks preceding the accident; therefore, his personal experience cannot be used to measure his earnings for purposes of compensation. We must, then, find “a similar employee in the same employment who has worked substantially the whole of such thirteen weeks” and use his experience as the measure of compensation. In this case it should not be difficult to determine the wages paid full-time firemen in the vicinity of Altamonte Springs, and use this means of measuring claimant’s rate of compensation.
Once we determine the claimant’s average weekly wage under subsection (2) the remainder of the section becomes inapplicable.
Subsection (3) comes into play only when neither subsection (1) or subsection (2) can be used.
Subsection (4) deals only with minors and is not directly applicable. It does have some inferential value as will be noted later.
Subsection (5) is not applicable. It applies only to the individual who does not desire to earn full pa}'-. The first sentence limits its operation to an employee who:
1. Was a part-time worker at the time of his injury;
2. Has adopted part-time employment as his customary practice and
3. Probably would have remained a part-time worker during the period of his disability.
In order that there be no misunderstanding, the legislature here defines “part-time worker” as “an individual who customarily works less than the full-time hours[1] or full-time work week of a similar employee in the same employment because unable or unwilling to accept full-time work, and does not include any employee who was working on a part-time basis because (a) his employer failed to provide full-time work for him, (b) he was unable to obtain full-time work, or (c) his attendance at school or college did not permit full-time employment.” (Emphasis supplied.) It is significant that the only reference to “the same employment” in this subsection is in relation to the hours or days of work constituting part-time employment. All other *17 references are to “employment” or “work” of any sort.
I think subsection (S) is a corollary of subsection (4). Subsection (4) authorizes an increase of the average weekly wage computed under subsections (1), (2) or (3), when the employee is a minor whose wages, but for the injury, might be expected to increase. Subsection (5) authorizes a diminution of the average wages as computed under subsections (1), (2) or (3) in the case of a slothful and indolent man who does not want and will not accept full-time employment in the industry in which he was injured or any other.
It will be noted that subsections (1), (2) and (3) are mandatory, each requiring computation of average weekly wage in a particular way under stated circumstances. Subsections (4) and (5) are permissive and apparently designed to allow for the exercise of discretion on the part of the Commission in the application of, and not as a substitute for, subsections (1), (2) and (3).
Of course, subsection (6) is not applicable.
This construction at which I have arrived, and which I am convinced is the proper meaning of the language used, is in harmony with the whole theory of the compensation law.
If an individual works part-time for several employers engaged in different industries, the construction which I would place upon the statute will allow, in event of injury, a reasonable compensation based upon the risk assumed by the employer and the employee. For example, if A works part-time for X and part-time for Y in a different industry serving four hours a day and five days a week in each employment and earns one dollar ($1.00) an hour while working for X and two dollars ($2.00) an hour while working for Y, the following practical situation exists: X pays A twenty dollars ($20.00) per week. Y pays A forty dollars ($40.00) per week. X pays for compensation insurance a percentage of twenty dollars ($20.00) per week based upon the risks incident to the work A is doing for him. Y pays for compensation insurance a percentage of forty dollars ($40.00) per week based upon the risks incident to the work A is doing for him. Should A be injured while working, his average weekly wage for compensation purposes could not be computed on his personal earnings because he has not worked substantially all of the preceding thirteen weeks in either industry. His average weekly wage for compensation purposes must be based upon the earnings of a full-time employee in the industry in which he is injured.
This is fair to all parties:
A is compensated for his loss of time based upon full-time employment in the industry, the risks of which occasioned his injury.
The insurance carrier has received a premium calculated on the actual risk assumed and is required to pay compensation on the basis of the premium actually received.
If A is compensated only on the basis of his actual earnings in one industry two injustices are committed. A receives compensation grossly inadequate in relation to his actual loss. The insurance carrier has received a premium disproportionately high in relation to the compensation it is required to pay. The premium charged for the insurance is a percentage of the wages paid, based upon the risks incident to the employment. In A’s case the premium paid was one-half that which would have been paid on full-time employment in each industry. But the risk assumed in either industry was only one-half the risk incident to full-time employment because A was exposed to such risks only one-half of each working day. If the carrier is permitted to pay on a lower basis than full-time employment it is unjustly enriched.
This can be made clearer by using actual figures, and supposing that A was injured while working for X in an industry in which the compensation rate was two percent of *18 the payroll. A full-time employee in the X industry would be paid forty dollars ($40.00) per week and the compensation carrier would receive eighty cents ($.80) premium. But A only worked half-time, drew half pay and was exposed to the risks of the industry only half the time, so he received twenty dollars ($20.00) per week and the compensation carrier received, as respects A’s wages, a premium of forty cents ($.40) per week.
If the full-time employee were injured he would receive compensation of 60% of forty dollars ($40.00) or twenty-four dollars ($24.00) per week. If A were injured and his compensation payments computed only on his earning-s in the X industry he would receive 60% of twenty dollars ($20.00) or twelve dollars ($12.00) per week. The carrier is thus receiving twice the premium rate for the risk assumed in relation to the part-time employee when compared with the full-time worker.
I cannot agree with the argument of the claimant, which is supported by several decisions of the Commission, that the wages earned simultaneously in two dissimilar employments should be combined in fixing compensation payments. This practice would produce inequities and result in much confusion in the fixing of premium rates. This can be illustrated by the hypothetical case above stated.
If A were injured in the X industry and his compensation rate computed on a basis of 'his actual earnings he would receive 60% of $60.00 or $36.00 per week. This would be grossly unfair to the carrier by requiring it to pay compensation based upon a pay rate greater than that used in computing the premium it received.
The statute provides the fair and reasonable means of determining the earnings upon which compensation will be based. If the individual has worked[2] in the same or a similar employment for substantially the whole of the preceding thirteen weeks his own experience controls. If he has not so worked, the experience of a comparable employee who has so worked is used. The legislature has stated this in clear and unambiguous terms. I would follow the statute.
My conclusions differ from the holding in the case of J. J. Murphy & Son, Inc. v. Gibbs et al., Fla.1962, 137 So.2d 553. With the utmost deference to that opinion I would point out that the words of the statute which I consider controlling were, for some unexplained reason, ignored in that opinion. In that case the Court said:
“Subsection (1) in our opinion contains key words which limit and/or define the meaning of employment as used in the whole section. This statement reads:
“ ‘If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer * * * his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the said thirteen weeks.’ (Emphasis added.)
“The underscored words in that portion of subsection (1), copied above, clearly indicate that only the wages received by the claimant for performance of the same type or kind of work as that in which she was engaged at the time of the injury, whether performed for one or more employers, should be used in arriving at her ‘average weekly wages’ for use in determining the amount of compensation to be paid under the Act.”
It will be observed that in quoting subsection 440.14(1), the Court omitted the words “during substantially the whole of *19 thirteen weeks immediately preceding the injury.” If these words were not in the statute I could agree with the conclusion reached in that case. But these words are in the statute. The legislature put them there. They must have been put there for a purpose. We have no legal authority to delete them or to construe the statute as though they did not exist.
It is this language which convinces me that subsection 440.14(1) cannot be used and that subsection 440.14(2) must be used in computing the claimant’s average weekly wage.
DREW, J., concurs.

. It is significant that the legislature here refers to short hours as constituting “part-time” work. This is inconsistent with a construction of 440.14(1) and 440.-14 (2) which would regard less than normal hours as meeting the condition of employment for “substantially the whole of thirteen weeks.”

. It is significant that the legislature used the word “worked” here, instead of the words “been employed.” If a man has a continuing contract for part-time labor he could be said to be employed substantially the whole of that time. But unless he has actually been on the job be cannot be said to have “worked” substantially the whole of that time.