DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ELIZABETH ALEXANDER,** et al.,
Petitioners,

v.

**PRESIDENT DONALD J. TRUMP,**
Respondent.

No. 4D2025-1019

[May 28, 2025]

Petition for writ of certiorari to the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Robert L. Pegg, Judge; L.T. Case No. 472022CA000246.

Charles D. Tobin, Chad R. Bowman, and Maxwell S. Mishkin of Ballard Spahr LLP, Washington, D.C., and Paul R. Berg of Whitebird, PLLC, Vero Beach, for petitioners.

Timothy W. Weber, Jeremy D. Bailie, and R. Quincy Bird of Weber, Crabb & Wein, P.A., St. Petersburg, for respondent.

KLINGENSMITH, C.J.

Petitioners-Defendants Elizabeth Alexander, Anne Applebaum, Nancy Barnes, Lee C. Bollinger, Katherine Boo, Nicole Carroll, Steve Coll, Gail Collins, John Daniszewski, Gabriel Escobar, Kelly Lytle Hernandez, Edward Kliment, Carlos Lozada, Kevin Merida, Marjorie Miller, Viet Thanh Nguyen, Emily Ramshaw, David Remnick, Tommie Shelby, and Neil Brown have filed a petition pursuant to Florida Rule of Appellate Procedure 9.100(c) for review of the trial court's order denying their motion to temporarily stay the underlying civil action given Respondent Donald J. Trump's status as President of the United States.

This case is before us for the second time. *See Alexander v. Trump*, 404 So. 3d 425 (Fla. 4th DCA 2025). In their petition, Petitioners assert they are entitled to a stay of the underlying proceedings, including discovery, because the Plaintiff-Respondent is the current President of the United States. They argue a stay of the case will avoid the constitutional conflicts

arising from allowing Respondent to proceed as a plaintiff in a state court civil action on claims that may involve his official conduct as the President. For the reasons set forth below, we deny the petition and affirm the trial court's order.

Appellate courts have discretionary certiorari jurisdiction to review an order denying a motion to stay an action. *See REWJB Gas Invs. v. Land O'Sun Realty, Ltd.*, 645 So. 2d 1055, 1056 (Fla. 4th DCA 1994); Fla. R. App. P. 9.030(b)(2)(A). Similarly, a trial court has broad discretion in ordering or denying a stay. *Sauder v. Rayman*, 800 So. 2d 355, 358 (Fla. 4th DCA 2001). That ruling will not be disturbed on appeal absent an abuse of discretion, which for certiorari must be a serious error that amounts to a departure from a clearly established principle of law. *Office Depot, Inc. v. Marsh & McLennan Cos., Inc.*, 937 So. 2d 1139 (Fla. 4th DCA 2006).

At the outset, we acknowledge that state court litigation involving a sitting President raises unique and profound questions under the Constitution. The President "occupies a unique position in the constitutional scheme," *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982), as "the only person who alone composes a branch of government," *Trump v. Mazars USA, LLP*, 591 U.S. 848, 868 (2020). Because the President embodies the Executive Branch of the federal government, state courts must be restrained from interfering with his office's operations under both the Supremacy Clause, contained in Article VI, Clause 2, of the United States Constitution, and Article II of the United States Constitution. *See Mississippi v. Johnson*, 71 U.S. 475, 500 (1866) ("[T]he President is the executive department.").

Petitioners argue the trial court's order denying their request to stay the proceedings invites an unavoidable constitutional collision between the trial court's exercise of "[t]he judicial power" under Article V of the Florida Constitution and Respondent's exercise of "[t]he executive Power" under Article II, as well as the Supremacy Clause. Petitioners further argue allowing this matter to proceed while Respondent is in office will interfere with his official duties and responsibilities under the Constitution. Petitioners effectively ask that the court invoke a temporary immunity under the Supremacy Clause on Respondent's behalf to stay this civil proceeding, even though Respondent has not sought such relief. They further allege that it would violate due process to allow Respondent to claim constitutional entitlement to stay cases because of his office but not allow them the same ability.

2

Article II, section 1, clause 1 of the United States Constitution, also known as the Vesting Clause, provides that "[t]he executive Power shall be vested in a President of the United States of America." The United States Supreme Court has held that the powers and immunities granted under Article II, in addition to other privileges, belong to the President and can be asserted by him. *See United States v. Nixon*, 418 U.S. 683, 708 (1974). That privilege, like others, "relates to the effective discharge of a President's powers," and is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *Id.* at 708, 711. But such privileges are afforded to the President alone, not to his litigation adversaries. *See id.* at 708.

Such privileges are not unique to the presidency. Other public officials enjoy similar protections as well. *See* § 11.111, Fla. Stat. (2024) (providing for the continuance of court proceedings during any session of the Legislature when a member of the Legislature is a party, witness, or attorney representing one of the litigants in the case). As explained in *Ferri v. Ackerman*, 444 U.S. 193 (1979):

> [Public servants] represent the interest of society as a whole. The conduct of their official duties may adversely affect a wide variety of different individuals, each of whom may be a potential source of future controversy. The societal interest in providing such public officials with the maximum ability to deal fearlessly and impartially with the public at large has long been recognized as an acceptable justification for official immunity. The point of immunity for such officials is to forestall an atmosphere of intimidation that would conflict with their resolve to perform their designated functions in a principled fashion.

*Id.* at 202–04. Likewise, a narrow immunity is given to Members of Congress found in the Speech or Debate Clause, Article I, Section 6, Clause 1, of the United States Constitution, but by its express terms, such immunity does not apply to non-officeholders. *See Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 404 (1979). Although *Ferri*, 444 U.S. at 202-04, and *Lake Country Estates, Inc.*, 440 U.S. at 404, address absolute immunity from suit—which is not at issue in this case—the justification for the immunity discussed in both cases is comparable to the justification supporting the privileges afforded to the President, namely preventing interference with the performance of a government official's designated functions.

3

In this case, Petitioners claim the right to assert a constitutional entitlement to a stay of the underlying proceedings like that available to a President by invoking it on Respondent's behalf. While government officials may claim the immunities and protections provided to them in court proceedings, the law is clear that such privileges are not available to third parties to claim, nor may such privileges be asserted by others on the officials' behalf. *See, e.g., United States v. Reynolds*, 345 U.S. 1, 7 (1953) (executive privilege "can neither be claimed nor waived" by a third party). The principle of standing says that, generally, one cannot assert someone else's constitutional rights. *United States v. Hansen*, 599 U.S. 762, 769 (2023); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (explaining that a litigant must assert his own legal rights and interests). Immunities and privileges, by their very nature, inure solely to the benefit of the individual for whom they are intended. Thus, application of a governmental immunity cannot be asserted by the Petitioners as private citizens.

For their claim of entitlement to a stay of the underlying proceedings, Petitioners rely primarily on *Clinton v. Jones*, 520 U.S. 681 (1997), and *Zervos v. Trump*, 94 N.Y.S.3d 75 (N.Y. App. Div. 2019).[1] Petitioners also reference the President's arguments in another case pending against him in a Delaware state court, where he has requested a stay of the proceedings based on his status as a sitting President. *See* Defendant's Motion to Dismiss, or Alternatively, to Stay on the Basis of Temporary Presidential Immunity, *United Atlantic Ventures, LLC v. TMTG Sub Inc.*, No. 2024-0184-MTZ (Del. Ch. Jan. 24, 2025). However, reliance on those cases is misplaced.

Both *Jones* and *Zervos* involved requests by President Clinton and President Trump, respectively, for stays in litigation when each was a party defendant. But in both cases, the courts found that although the President was certainly entitled to ask for a pause in the underlying legal proceedings, he was not necessarily entitled to one as a matter of law. In *Jones*, the Supreme Court held President Clinton could be sued in federal court for alleged sexual advances that occurred before becoming President. 520 U.S. at 685, 693-95. The Court further held that "the doctrine of separation of powers does not require federal courts to stay all private actions against the President until he leaves office." *Id.* at 705-06. The Court also recognized that, while the trial court had discretion to stay the

---

[1] This court is not bound by the decisions rendered in *Zervos* or in any other state court relating to stays of those proceedings. *See J. J. Murphy & Son, Inc. v. Gibbs*, 137 So. 2d 553, 562-63 (Fla. 1962).

case, discretion would have been abused under the circumstances. *Id.* at 706-08. In *Zervos*, a New York court held that President Trump, as the sitting President of the United States, was not entitled to a stay in a state court action grounded in claims of defamation brought against him based on alleged actions that occurred before taking office. 94 N.Y.S.3d at 78, 82-88.

Petitioners also rely on *Zervos* and *United Atlantic* to assert that Respondent is estopped from objecting to their request to pause this case because of legal arguments made on his behalf seeking stays in other courts. These cases are not substantially similar to the one at bar to estop Respondent from objecting to a stay. By trying to draw parallels to those cases, Petitioners conflate situations where the President is a defendant in an action, in contrast to this case, where the President is the plaintiff. Because those cases involve situations where a President was the defendant on claims brought *against* him, and not a plaintiff pursuing claims initiated *by* him, those cases are inapposite.

Petitioners correctly point out that whenever a President is sued in state court in his individual capacity, and attempts are made to institute compulsory process over him, the risk of distractions to his public duties in dealing with such lawsuits creates an inherent risk to the effective functioning of government. Such lawsuits subject a President not only to potential harassment, but also risk diverting him from his official duties which are of "unrivaled gravity and breadth." *Trump v. Vance*, 591 U.S. 786, 800 (2020). That is not in dispute.

However, this is not a case where the state court is asserting jurisdiction over Respondent without his consent. Quite the contrary. Here, Respondent is a willing participant in the underlying proceedings and has thus far declined to assert a privilege to cease this action. Even though litigants may be entitled to claim a privilege, they may also voluntarily elect not to. *See Garner v. United States*, 424 U.S. 648, 653 (1976) (explaining that the Fifth Amendment privilege against compulsory self-incrimination does not prevent a person from voluntarily testifying in matters that may be incriminating); *Gay v. Whitehurst*, 44 So. 2d 430, 432 (Fla. 1950) ("One may waive or remit any constitutional or statutory privilege made for his personal benefit.").

Here, Respondent has not sought the affirmative relief of a stay in the trial court. When the President is a willing participant, courts do not risk improperly interfering with the essential functioning of government. The President—by virtue of his exceptional position—is uniquely equipped to

determine how to use his time, to assess the attention a lawsuit will require, and to decide whether the lawsuit will divert him from his official business. When an officeholder chooses to initiate litigation, courts must assume the officeholder already has weighed the burdens on their official duties. Although Petitioners raise several claims about how this case will negatively impact Respondent's ability to perform his duties as President, the trial court correctly observed that the filing of any request for a stay or other relief from court orders in the underlying proceedings because of his role as the nation's Chief Executive would be solely in his prerogative:

> Should the duties of the President interfere with his ability to perform his obligations in this action, he is certainly entitled to seek the appropriate relief. Should he not do so, yet not comply with the rules of this court, defendants may apply for the appropriate sanctions as they would against any other plaintiff. These could be the usual sanctions of fines, costs, attorney's fees, and the ultimate sanction of dismissal of the action should that be appropriate. Defendants would not be precluded from seeking another stay of the proceeding if plaintiff fails to perform his obligations under Florida law and the [R]ules of [C]ivil [P]rocedure.

Although Petitioners claim this litigation will be a distraction to the Presidency, Respondent is in the best position to determine if these proceedings would be a diversion and interfere with the obligations of his office, or whether his continued participation is consistent with the performance of his official responsibilities. And, as the trial court correctly pointed out in its order, Respondent also retains the right to either dismiss this case or seek a stay in the future should an assessment of his time commitment change, or if scheduling issues arise due to circumstances occurring during the litigation. Further, if such issues were to occur, courts have flexible tools to handle timing without freezing litigation altogether. *See* Fla. R. Civ. P. 1.090(b)(1) ("*In General.* When an act may or must be done within a specified time, the court may, for good cause extend the time[.]"); Fla. R. Civ. P. 1.460 (permitting trial courts to grant motions to continue upon good cause shown).

In sum, the right to claim burdens on executive functions belongs to the Executive Branch—not to its opponent. Separation of powers protects the Executive from undue burdens imposed by other branches, not burdens which the Executive willingly accepts. While both Article II and the Supremacy Clause operate as a shield to protect both the President and the Presidency from the risks of harassment and distraction by being

hailed into state courts as an unwilling defendant, those same protections may not be used by his adversaries as a sword to prevent Respondent from voluntarily initiating or continuing civil litigation in his individual capacity. Though Petitioners raise several speculative concerns about the potential impact this litigation may have on the ability of Respondent to fulfill his Presidential duties, they lack standing to raise such concerns. Courts should focus only on real burdens raised by the Executive as a plaintiff, not those hypothesized by any defendants. Whether the pursuit of this litigation is in his best interests, or consistent with the responsibilities of his office, is exclusively within Respondent's purview. Therefore, the petition for review is denied.

*Petition denied.*

WARNER and MAY, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***